UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

JAMES STILE,                          )
                                      )
            Plaintiff                 )
                                      )
      v.                              )        1:13-cv-00248-JAW
                                      )
SOMERSET COUNTY, *et als.*,           )
                                      )
            Defendants                )


## RECOMMENDED DECISION ON MOTION TO DISMISS

In this action, Plaintiff James Stile, proceeding *pro se*, alleges that for more than 30 days,

corrections officers at the Somerset County Jail subjected him to an ongoing pattern of excessive

force in response to his assertion that he could not walk and his decision to engage in a hunger

strike.

The matter is before the Court on Defendant David Allen's Motion to Dismiss (ECF No.

105) ("Motion").  Defendant Allen maintains that Plaintiff has failed to state a claim upon which

relief can be granted.   As explained below, following a review of the pleadings, and after

consideration of the parties' arguments, the recommendation is that the Court grant in part and

deny in part the motion.

### STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a

claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon

which relief can be granted."   In its assessment of the motion, the Court must "assume the truth

of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom."

*Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme*

*Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)). To overcome a motion to dismiss, a plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim(s) at issue. *Id.*

## FACTUAL BACKGROUND

The facts set forth herein are derived from Plaintiff's Amended Complaint (Final), which facts are deemed true when evaluating the Motion to Dismiss.[1] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

Plaintiff was incarcerated at the Somerset County Jail as a pretrial detainee between September 13, 2011, and September 30, 2013. (Amended Complaint (Final), ¶ 3, ECF No. 92.) Plaintiff alleges, *inter alia*, that Defendants violated his Fourteenth Amendment rights when they confined him under conditions that constituted punishment, imposed disciplinary sanctions without due process of law, and employed excessive force in connection with prison administration. (*Id.*, Introduction.)

Plaintiff alleges that he was assaulted by more than 30 different corrections officers during his stay in the Somerset County Jail (SCJ). (*Id.* ¶ 4.) Plaintiff also asserts that he suffered "voluminous amounts of violations committed … by so many different perpetrators over such a long period of time (39) thirty nine days, multiple times each day, amounting to a few hundred acts." (*Id.* ¶ 4.) Defendant Allen, as Jail Administrator, held a supervisory position over all corrections officers involved in the assaults. (*Id.* ¶ 5.)

Plaintiff maintains that beginning in December 2011, he was harassed by various corrections officers. (*Id.* ¶ 10.) In addition, according to Plaintiff, while he was in a special management unit, on a daily basis, he was subjected to strip searches and visual body cavity

---

[1] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

searches by multiple corrections officers. (*Id.* ¶ 12.) Plaintiff also contends that an officer spit in and threatened to place glass in Plaintiff's food. (*Id.* ¶ 13.) For a period of 39 days, Plaintiff stopped eating his meals. (*Id.* ¶ 14.)

On December 26, 2011, Plaintiff refused to relinquish his blanket and was sprayed with a chemical agent, shocked with an electric shield and another device, kicked and punched, and dragged to a suicide cell by a group of corrections officers. (*Id.* ¶ 15.) Plaintiff asserts that following the encounter, as the result of pain, including pain from spinal impairment, he was unable to walk. (*Id.* ¶¶ 16, 21.) Plaintiff also alleges that on more than one occasion, Plaintiff's attorney was turned away when he attempted to visit Plaintiff. (*Id.*)

In his complaint, Plaintiff contends that groups of multiple corrections officers came to his cell daily and employed coercive measures because of his refusal to stand and walk. The groups were usually supervised by a sergeant or lieutenant. (*Id.* ¶¶ 18-19.) The corrections officers, when moving Plaintiff to and from medical in the morning and in the evening, employed shock devices and stepped on his feet in the process. (*Id.* ¶ 28.) Corrections officers also placed Plaintiff in a restraint chair and manipulated him in such a way as to cause extreme back pain before they transported him to medical. (*Id.* ¶¶ 21, 29, 30.)

In a section of his Amended Complaint (Final) titled "Claims for Relief," Plaintiff states:

> The failure of defendants … [including] JAIL ADMINISTRATOR DAVID ALLEN … to take disciplinary or other action to curb or correct the known pattern of physical abuse of … the plaintiff by the defendant [corrections officers] and their immediate supervisors constituted deliberate indifference to the plaintiff's … safety and contributed to and proximately cause the above-described violation of the Fourteenth Amendment rights and assault and battery. The named individuals are responsible for the assault and batteries upon the plaintiff as they were directly supervising the [corrections officers] during cell extractions and forceful transports to [medical].

(*Id.* p. 25, ¶ 3.)

**DISCUSSION**

Through his motion, Defendant Allen contends that dismissal is appropriate because Plaintiff does not state a plausible claim of supervisory liability under the federal civil rights act, and because individual liability cannot be imposed on him under the Americans with Disabilities Act as Plaintiff asserts.  (Motion at 1, 7-9 & n.2.)

**A.      Supervisory Liability under 42 U.S.C. § 1983**

In response to the motion, Plaintiff argues that the frequency and intensity of the actions of the corrections officers support the inference that Defendant Allen was aware of and condoned the conduct.   Plaintiff contends that the number of cell extractions in just over a month "interrupt[ed] everybody's day … including defendant David Allen's days."  (Opposition at 2, ECF No. 117.)  Plaintiff also argues that because one cell extraction requires the filing of a number of reports, Defendant Allen would have been aware of the conduct.[2]  (*Id.*)  In Defendant's view, "The horrible allegations … could not have possibly happened without the express knowledge and consent or implied consent of defendant David Allen."  (*Id.* at 3.)[3]

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  "Public officials may be

---

[2] Plaintiff alludes to a policy (Policy and Procedure 8.7) that requires supervisors to review use of force incident reports.  (Opposition at 7-8.)  The Court can consider documents upon which a plaintiff relies when assessing the merits of a motion to dismiss, and can take judicial notice of public records or documents central to a plaintiff's claim. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  The location of the policy on the record, however, is not readily apparent.   Although Defendant Allen does not challenge the accuracy of Plaintiff's representation regarding the policy, he argues that the Court should not consider the issue because Plaintiff did not include an allegation about the policy in the Amended Complaint (Final).  (Def. Allen's Reply at 1 n.1, ECF No. 119.)

[3] Plaintiff states in his Opposition that Defendant Allen was present during or following some of the alleged cell extractions and sarcastically thanked Plaintiff for the opportunity to give his officers "practice" and for sparing the SJC the cost of feeding him.  (Opposition at 14.)  Again, Defendant Allen asserts that this factual information should be disregarded because it is not in the Amended Complaint (Final).

4

held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 16 (1st Cir. 2011) (quoting *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 768 (1st Cir. 2010)). "Because precise knowledge of the chain of events leading to the constitutional violation may often be unavailable to a plaintiff" at the pleading stage of the litigation," *id.*, courts often must turn to "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, to make "a contextual judgment about the sufficiency of the pleadings," *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009).

A contextual judgment in this case supports a plausible inference that Defendant Allen, as the jail administrator, would have been informed of or otherwise aware of the measures employed by corrections officers to address the particular concerns associated with Plaintiff's detention.[4]

---

[4] The cases cited by Defendant Allen, in which the First Circuit held that a plaintiff did not assert any actionable non-speculative claims of supervisory liability, are distinguishable. In *Soto-Torres v. Fraticelli*, 654 F.3d 153 (1st Cir. 2011), for example, the plaintiff sought to hold the "special agent in charge" of the FBI's Puerto Rico operations liable for rough treatment and a four-hour detention imposed during the execution of a search warrant, even though the special agent in charge was not present for the search. The Court emphasized that the plaintiff's allegations of supervisory knowledge and failure to act were insufficient in that context because the basis for inferring personal knowledge or direction related to the treatment of the plaintiff was not apparent from the background facts. *Id.* at 160.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court considered whether a Pakistani prisoner stated a claim of intentional discrimination, based on race, religion or national origin, against the Secretary of Defense and the Director of the FBI. The Court rejected a conclusory allegation of a purpose to discriminate where implementation of the policy in question served a neutral investigative purpose, *id.* at 680-81, i.e., a "nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts," *id.* at 682. The Court noted that intent in the context of an equal protection claim required more than a showing of volition or awareness of a disparate impact. *Id.* at 676-77.

Here, in comparison, the Court must evaluate the plausibility of an inference that the administrator of a relatively small county jail in central Maine was consulted or was aware of the treatment of a pretrial detainee who, allegedly, engaged in a hunger strike and who also either could not or would not walk during daily transports to medical over the course of a 39-day period and, as an alleged result, was subjected to a daily regimen of forced extractions involving electric prods and other force. The supervisory connection for which Plaintiff argues is much more intuitive than the one argued in *Soto-Torres*. Additionally, the condonation or tacit authorization needed to support the connection between Defendant Allen and his subordinates is different from the purposeful discrimination inference required to support the constitutional theory presented in *Iqbal*.

Indeed, given the challenges presented by Plaintiff's detention,[5] given the number of the alleged cell extractions, and given Plaintiff's descriptions of the techniques used by the corrections officers, the inference that Defendant was aware of, and through inaction condoned or tacitly authorized, at least some of the alleged coercive measures, is plausible.[6]

## B.     The Americans with Disabilities Act

As Defendant Allen argues (Motion at 9 n.2), an individual cannot be liable for money damages under Title II of the ADA or section 504 of the Rehabilitation Act.    *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 363 n.5 (D. Me. 2012), *reconsideration denied* (Mar. 16, 2012) (citing *Maine Human Rights Comm'n v. Coffee Couple LLC*, No. 1:10-cv-00180-JAW, 2011 WL 2312572, at *7, 2011 U.S. Dist. LEXIS 61768, at *17 (D. Me. June 8, 2011) *recommended decision adopted in the absence of objection,* 2011 WL 2580644, 2011 U.S. Dist. LEXIS 70009 (D. Me. June 29, 2011)).  To the extent, therefore, that Plaintiff seeks to recover damages on his ADA claim, dismissal is appropriate.[7]

CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court grant in part Defendant Allen's Motion to Dismiss (ECF No. 105), and dismiss Plaintiff's ADA claim to the

---

[5] Based on Plaintiff's allegations, the challenge that Plaintiff presented for the Somerset County Jail was atypical and included a 39-day hunger strike and a refusal or inability to walk from his cell on his own power.

[6] Defendant Allen also argues that the doctrine of qualified immunity warrants dismissal.  (Motion at 5-7.)  Accepting Plaintiff's allegations as true at this stage of the proceedings, and because Defendant Allen's knowledge of the corrections officers' conduct is plausible, the doctrine is inapplicable.

[7]  Plaintiff's claim for injunctive relief against Somerset County and his "official capacity" claim for injunctive relief against officials charged with operating the SCJ are arguably moot, assuming that the Court would not permit Plaintiff's return to the SCJ in connection with his forthcoming criminal trial.  *See Nasious v. Colorado*, 495 Fed. App'x 899, 903 (10th Cir. 2012); *Fly v. Brown*, No. 3:14-cv-01268-SMY, 2014 WL 6790417, at *3 (S.D. Ill. Dec. 2, 2014); *Cade v. Williams*, No. 5:14-cv-00046-JLH/JTR, 2014 WL 5529743, at *2 (E.D. Ark. Oct. 31, 2014).  Plaintiff's ADA claim for damages against Somerset County would appear to remain.

extent that Plaintiff requests an award of money damages against Defendant Allen in his individual capacity. The recommendation is that the Court otherwise deny Defendant Allen's Motion to Dismiss.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. Section 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of December, 2014.