UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| JAMES STILE, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | 1:13-cv-00248-JAW |
| SOMERSET COUNTY, et al. | ) | |
| Defendant | ) | |

**ORDER AFFIRMING THE RECOMMENDED DECISION
OF THE MAGISTRATE JUDGE**

In performing a de novo review of the Magistrate Judge's recommended decision in this case, the Court clarifies that documents outside a complaint generally may not be considered in ruling on a motion to dismiss, that the parties must give the Magistrate Judge all relevant information before the recommended decision is issued, and that Local Rule 72.1 disallows reply memoranda without prior permission of the Court. Turning to the merits, assuming the truth of the allegations in the amended complaint and drawing reasonable inferences from those allegations, the Court overrules the Jail Administrator's objections and affirms the Magistrate Judge's Recommended Decision to deny the Defendant's motion to dismiss the supervisory liability claim in the Plaintiff's Amended Complaint Final.

**I.   BACKGROUND**

On July 1, 2013, James Stile, acting pro se, filed suit against Somerset County, Maine, David Allen, the Somerset County Jail Administrator, and a host of Somerset

County Corrections Officers. *Compl.* (ECF No. 1). On August 14, 2014, Mr. Stile filed what he called an Amended Complaint Final. *Am Compl. Final* (ECF No. 92). In that Amended Complaint Final, Mr. Stile pursued his lawsuit against Mr. Allen under two theories: (1) pursuant to 42 U.S.C. § 1983, he claimed that the Defendants violated a number of his constitutional rights; and (2) pursuant to the Americans with Disabilities Act (ADA), he claimed that the Defendants discriminated against him due to his disability. *Id.* at 24-25.

On September 22, 2014, Defendant David Allen moved to dismiss Mr. Stile's Amended Complaint Final.[1] *Def. David Allen's Mot. to Dismiss* (ECF No. 105). Mr. Stile responded on October 10, 2014. *Pl.'s Resp. to Def. David Allen's Mot. to Dismiss* (ECF No. 117). Mr. Allen replied on October 24, 2014. *Def. David Allen's Reply Mem. of Law in Support of Mot. to Dismiss* (ECF No. 119). On December 30, 2014, the Magistrate Judge issued a recommended decision in which he recommended that Mr. Allen's motion to dismiss be granted in part and denied in part. *Recommended Decision on Mot. to Dismiss* at 6-7 (ECF No. 127). Specifically, the Magistrate Judge recommended that Mr. Allen's motion to dismiss the supervisory liability count under 18 U.S.C. § 1983 be denied and that his motion to dismiss the ADA claim be granted. *Id.*

On January 16, 2015, Mr. Allen objected to the portion of the recommended decision in which the Court recommended that the § 1983 claim not be dismissed.

---

[1] In Mr. Stile's original Complaint, he listed Mr. Allen with other Defendants in a Maine Tort Claims Act claim. *Compl.* at 21. His Amended Complaint Final, however, does not name Mr. Allen as a Defendant for that claim. *Am. Compl. Final* at 24-25.

2

*Def. David Allen's Partial Objection to Recommended Decision on Mot. to Dismiss* (ECF No. 149) (*Allen Objection*). Mr. Stile responded to Mr. Allen's objection on January 29, 2015, urging the Court to affirm the recommended decision. *Objection to Def.[']s Objection to Magistrate[']s Recommended Decision to Def. David Allen's Mot. for Dismissal* (ECF No. 153) (*Stile Resp.*). On February 2, 2015, Mr. Allen replied to Mr. Stile's response to his objection to the recommended decision. *Def. David Allen's Resp. to Pl.'s Objection to Recommended Decision on Def.'s Mot. to Dismiss* (ECF No. 158) (*Allen Reply*).

## II. JAMES STILE'S OBJECTION

When Mr. Stile filed his response to Mr. Allen's objection, he requested that the Court "allow for the Plaintiff to enter into evidence, video documentation and documentary paper evidence that supports the Plaintiff's position that Defendant Allen had more than a casual relation to the assaults upon the Plaintiff and that there was much more than, '*conduct that amounted to condonation or tacit authorization*,' of which was a minimum requisite." *Stile Resp.* at 2 (emphasis in original). Mr. Stile attached to his response three exhibits: (1) Answers to Interrogatories, (2) a document dated January 14th, 2012 and Bate-stamped 1064, and (3) a portion of a document titled, "Somerset County Jail Policy and Procedure 8.7. Use of Force" and Bate-stamped 687-88. *Id.* Attachs. A-C. He claims the right to present these additional documents to the Court pursuant to 28 U.S.C. § 636(b)(1)(C). *Id.* at 1. He is wrong.

The Court may not consider these documents. *See Recommended Decision* at 4 n.2. The motion to dismiss challenges the legal sufficiency of the allegations in a complaint and a court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], the complaint states a claim for which relief can be granted." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). The law allows the Court to consider a limited set of documents in ruling on a motion to dismiss, including documents attached to the complaint or any other documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint." *Trans-Spec Trust Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). It is questionable whether the documents Mr. Stile attached to his response to Mr. Allen's objection fit within this narrow exception. *See Recommended Decision* at 4 n.2.

Even if the Court could consider the Jail's use of force policy, there is another reason it may not do so at this stage. Mr. Stile did not attach them to his original response to the motion to dismiss. *See Pl.'s Resp. to Def. David Allen's Mot. to Dismiss* (ECF No. 117). Accordingly, as Mr. Stile did not present them to the Magistrate Judge, he did not give the Magistrate Judge an opportunity to consider them. *See Recommended Decision* at 4 n.2 ("The location of the policy on the record . . . is not readily apparent"). Instead, Mr. Stile waited for the Magistrate Judge to issue his recommended decision and he is now attempting to present to this Court what he did not present to the Magistrate Judge. This he may not do. "Parties must take before

4

the magistrate, not only their 'best shot' but all of their shots." *Borden v. Sec'y of Health and Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (per curiam) (internal quotation marks and citation omitted); *Flanders v. Mass Resistance*, 1:12-cv-00262-JAW, 2013 U.S. Dist. LEXIS 71517, at *6 (D. Me. May 21, 2013).

## III. DAVID ALLEN'S REPLY

On February 2, 2015, Mr. Allen filed a reply to Mr. Stile's response to his objection to the recommended decision. *Allen Reply* at 1-4. This Mr. Allen may not do except by prior order of the court. Objections to recommended decisions are controlled by Local Rule 72.1. D. ME. LOC. R. 72.1. Local Rule 72.1 allows a party objecting to a recommended decision to file an objection within 14 days after being served with a copy of the decision, and it allows the responding party to file a response within 14 days after being served with an objection. *Id.* It allows a reply to the response only by prior order of the court: "Except by prior order of the court, no reply memorandum shall be filed." *Id.* Mr. Allen did not move for an order allowing him to file a reply and therefore the Court has not considered his reply under Local Rule 71.2.

## IV. THE MERITS

### A. David Allen's Objections

The sole objection before the Court is to the Magistrate Judge's recommendation that the Court deny the motion to dismiss as to the supervisory liability claim under 42 U.S.C. § 1983. *Allen Objection* at 1. Mr. Allen objects to the Magistrate Judge's use of "contextual judgment", arguing that the United States

5

Supreme Court decision of *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) forbids reliance on conclusions "not entitled to the assumption of truth" and allows consideration only of well-pleaded factual allegations. *Allen Objection* at 4 (quoting *Iqbal*, 556 U.S. at 679). Mr. Allen recites *Iqbal* and says that Mr. Stile failed to be any more definite and less conclusory than the Plaintiff's allegations in *Iqbal*. *Id.* (quoting *Iqbal*, 556 U.S. at 680-81). Mr. Allen concludes that once the conclusory allegations are disregarded, Mr. Stile "makes one factual allegation about Mr. Allen — that he was the jail administrator." *Id.* at 5. He argues that this fact alone does not support a claim of supervisory liability. *Id.* at 5-6. Finally, he criticizes the Magistrate Judge for considering a fact that Mr. Stile did not plead, namely that the Somerset County Jail is a "relatively small facility in central Maine." *Id.* at 6.

### B. DISCUSSION

#### 1. The Allegations in the Stile Complaint

Mr. Stile introduces his allegations by describing the following general violations of his constitutional rights: (1) confinement in segregation, (2) repeated daily strip searches and visible body cavity searches, (3) daily cell searches, (4) cell searches anytime he left his cell, (5) the use of four-point restraints every time he was removed from his cell. *Am. Compl. Final* at 2-3. Mr. Stile alleges that Mr. Allen was one of the jail administrators of the Somerset County Jail during his period of incarceration there. *Id.* ¶ 5.

In his Amended Complaint Final, Mr. Stile claims that the Corrections Officers at the Somerset County Jail did the following:

6

(1) After Mr. Stile was involved in an altercation with an inmate named Ernest Almeida on December 20, 2011, the Jail placed him in administrative segregation in a unit called the Special Management Unit (SMU). *Id.* ¶ 10. Inmate Almeida had a relative who was a corrections officer whose last name was also Almeida and who harassed Mr. Stile by awakening him every fifteen minutes. *Id.* Other corrections officers joined in the harassment, including removing his blanket from his cell, which caused him to experience cold chills and to be unable to sleep. *Id.* ¶ 10.

(2) On December 22, 2011, the corrections officers came to Mr. Stile's cell, announced they had a search warrant, failed to produce the warrant, stripped him naked, and left him in the cell. *Id.* ¶ 11.

(3) Daily from September 13, 2011 until January 31, 2012, for six days in September 2012, for four days in May 2013, and from September 24, 2013 until September 30, 2013, the corrections officers subjected Mr. Stile to strip searches and visible body cavity searches. *Id.* ¶ 12. They also subjected Mr. Stile to these searches whenever he was removed from his cell. *Id.*

(4) Two corrections officers, Corrections Officers Almeida and Meunier, spit in Mr. Stile's food tray before giving him his food. *Id.* ¶ 13. Corrections Officer Meunier stated that shards of glass would be placed in Mr. Stile's food. *Id.* As a consequence, Mr. Stile stopped

eating food for a period of thirty-nine days because he feared his food would be tainted. *Id.* ¶ 14. Mr. Stile filed grievances about his treatment and his grievances went unanswered. *Id.* His lack of food led to his experiencing hallucinations and lost consciousness. *Id.*

(5) On December 26, 2011, Corrections Officer Meunier told Mr. Stile that he was removing his blankets and bedding in order to punish him and, when Mr. Stile refused, he was sprayed with a chemical agent, shocked with an electrical shield, beaten with fists and booted feet, and dragged to a suicide watch cell, where he was strip searched, subjected to a visual body cavity search, and refused clean clothing free of chemical agents. *Id.* ¶ 15.

(6) On the grounds that to use the telephone or receive attorney visits he had to be able to walk, the corrections officers repeatedly denied Mr. Stile access to his attorney by refusing to allow him to use the telephone and by turning his attorney away when the lawyer attempted to visit him. *Id.* ¶ 16.

(7) The corrections officers removed all of his legal documents and his reading glasses from his cell for a period of approximately thirty-nine days. *Id.* ¶¶ 17, 35.

(8) The corrections officers dressed in protective gear visited his cell on a daily basis and instructed him to stand, submit to handcuffs and walk, but Mr. Stile was unable to do so because of his back problems.

8

*Id.* ¶¶ 18-19. As a result, the corrections officers assaulted and battered him, forcibly placed him in a restraint chair, and electrically shocked him. *Id.* When Mr. Stile lost continence, he was forced to lie face down in his own urine. *Id.* ¶ 20.

(9) Four times each day, the corrections officers forced Mr. Stile into the restraint chair in such a way as to deliberately aggravate his back problem. *Id.* ¶¶ 21, 29-30.

(10) The corrections officers placed Mr. Stile into freezing cold showers, refused to give him a towel, bedding or clothing and forced him to lie shivering in his cell for hours. *Id.* ¶ 22.

(11) Four times per day for nearly forty days, while transporting Mr. Stile, the corrections officers deliberately stepped on his feet and toes with their boots, causing his feet to turn black and blue. *Id.* ¶¶ 23, 25.

(12) The corrections officers forced Mr. Stile to wear a so-called "turtle suit", which left his genitals exposed to female staff and embarrassed and humiliated Mr. Stile. *Id.* ¶¶ 23-24.

(13) For about forty days, the corrections officers shocked Mr. Stile each evening before he was taken to the doctor and each time he was returned to his cell. *Id.* ¶¶ 26-28.

(14) The corrections officers deliberately housed Mr. Stile with mentally ill inmates who constantly warned Mr. Stile about the

corrections officers and who caused him anxiety and emotional pain. *Id.* ¶ 31.

(15) The corrections officers failed to provide Mr. Stile with proper hydration, and for approximately forty days Mr. Stile had extremely limited amounts of water from his sink and eventually was unable to reach for water due to his weakened condition. *Id.* ¶ 32.

(16) The Jail held disciplinary board hearings without Mr. Stile being present and denying him the ability to call witnesses or speak on his own behalf. *Id.* ¶ 33.

(17) The Jail denied Mr. Stile access to clergy and the ability to attend religious services. *Id.* ¶ 34.

Regarding Mr. Allen specifically, Mr. Stile claims that Mr. Allen failed to take proper disciplinary action against the corrections officers who were abusing him and he makes general allegations against all of the Defendants, including Mr. Allen, for violating his constitutional rights. *Id.* at 25-27.

### 2. Legal Principles

Even after *Iqbal*, a court is still required to "assume the truth of all well-plead[ed] facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 68 (1st Cir. 2010) (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007)). As Mr. Allen points out, a court need not assume the truth of conclusory allegations, and the complaint must state at least a "plausible claim for relief." *Iqbal,* 556 U.S. at 678-79.

However, "[n]on-conclusory factual allegations in the complaint must . . . be treated as true, even if seemingly incredible." *Ocasio–Hernández,* 640 F.3d at 12. A court may not "attempt to forecast a plaintiff's likelihood of success on the merits." *Id.* at 13. Furthermore, courts should be "solicitous of the obstacles that pro se litigants face, and . . . endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy,* 550 F.3d 154, 158–59 (1st Cir. 2008).

A review of the recommended decision and Mr. Allen's objection reveals essential congruity on the legal standard for supervisory liability. The Magistrate Judge observed that under *Iqbal*, courts must often turn to "judicial experience and common sense", *Recommended Decision* at 5 (quoting *Iqbal*, 556 U.S. at 679), and must often make "a contextual judgment about the sufficiency of the pleadings." *Id.* (quoting *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 48 (1st Cir. 2009). Selecting a different case, Mr. Allen quoted similar language from the First Circuit for the imposition of supervisory liability as appears in the recommended decision: that a plaintiff must demonstrate that his constitutional injury "resulted from direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." *Recommended Decision* at 4-5 (quoting *Ocasio–Hernández,* 640 F.3d at 16); *Allen Objection* at 3 (The plaintiff must demonstrate "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" between the actor and the underlying violation) (quoting *Camilo-Robles v. Zapata,* 175 F.3d 41, 44 (1st Cir. 1999)).

Mr. Stile alleges in his Amended Complaint Final that he got in an altercation with one of the correction officer's relatives, a fellow inmate, and that from then on, the correction officers at the Somerset County Jail waged an ongoing, long and deliberate campaign to physically and mentally abuse him, to unnecessarily and repeatedly strip search him and subject him to visual body cavity searches, to leave him naked for extended periods in his cell, to turn off the hot water when he showered and to refuse to give him a towel, to improperly assign him to administrative segregation, to refuse to properly process his grievances, to assault him, leaving him black and blue, to deny him clergy, counsel, proper hydration, and visitors, to remove his legal papers, to deprive him of his eyeglasses, and to subject him to daily taunts and abuses.

Contrary to Mr. Allen's position, it is a common sense and logical contextual inference that if a Jail Administrator were doing his job, he would have some knowledge of an inmate being treated in this fashion over the course of many months. Under this rubric, it is proper for purposes of a motion to dismiss, to infer that Mr. Allen either condoned or tacitly authorized what occurred. This conclusion obtains regardless of the size of the jail and even assuming that the Magistrate Judge had no right to observe that the Somerset County Jail is not a major metropolitan prison, a proposition that seems dubious, the First Amended Complaint still survives dismissal.

## V. CONCLUSION

The Court has reviewed and considered the Magistrate Judge's recommended decision, together with the entire record, and has made a de novo determination of all matters adjudicated by the Magistrate Judge's recommended decision. The Court concurs with the recommendations of the Magistrate Judge for the reasons set forth in his Recommended Decision and for the additional reasons set forth in this Order.

The Court AFFIRMS the Recommended Decision on Motion to Dismiss (ECF No. 127). The Court GRANTS the Defendant's Motion to Dismiss in part and DISMISSES the Plaintiff's Americans with Disability Act claim to the extent the Plaintiff demands money damages against Defendant David Allen and the Court DENIES the Defendant's Motion to Dismiss to the extent Defendant David Allen demands dismissal of the supervisory liability claim against him under 42 U.S.C. § 1983.

SO ORDERED.

/s/John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 17th day of February, 2015