UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JAMES STILE,                        )
                                    )
            Plaintiff,              )
                                    )
        v.                          )        1:13-cv-00248-JAW
                                    )
SOMERSET COUNTY, et al.,            )
                                    )
            Defendants.             )


## ORDER ON DEFENDANTS'
## MOTIONS FOR SUMMARY JUDGMENT
## AND PLAINTIFF'S RELATED MOTIONS

In this action, James Stile alleges that while he was a pretrial detainee at the

Somerset County Jail, Defendants deprived him of several constitutionally-

guaranteed rights,[1] as well as his rights under the Americans with Disabilities Act.

Before the Court are the following motions:

Defendants' Motion for Judgment on the Pleadings and for Summary
Judgment. *Majority Defs.' Mot. for J. on the Pleadings and for Summ. J.*
(ECF No. 431);[2]

Motion for Judgment on the Pleadings and for Summary Judgment by
Defendants Keith Plourd and Jeffrey Jacques. *Defs. Plourd's and
Jacques's Mot. for J. on the Pleadings and for Summ. J.* (ECF No. 434);

Defendants Somerset County and Barry DeLong's (the County
Defendants) Motion for Judgment on the Pleadings and Motion for

---

[1]     Mr. Stile asserts claims of excessive force, deprivation of First Amendment rights, unlawful
search and seizure, unconstitutional strip searches, denial of due process, and denial of medically
necessary treatment.  Mr. Stile also asserts a state law claim of assault.  *Am. Compl. Final* (ECF No.
92) (*Final Compl.*)
[2]     The motion was filed on behalf of all of the Defendants except Defendants Plourd, Jacques,
Allen, DeLong, and Somerset County, who filed separate dispositive motions.  The Defendants other
than Defendants Plourd, Jacques, Allen, DeLong, and Somerset County, will be referred to collectively
as the Majority Defendants.

Summary Judgment. *County Defs.' Mot. for J. on the Pleadings and for Summ. J.* (ECF No. 438);

Defendant David Allen's Motion for Summary Judgment. *Def. Allen's Mot. for Summ. J.* (ECF No. 440);

Plaintiff's Motion to Strike Video Exhibits, including a separate motion for a ruling on the motion to strike. *Pl.'s Mot. to Strike Video Exs.* (ECF No. 499); *Mot. for Ruling on Mot. to Strike* (ECF No. 583);

Plaintiff's Motion for Court to Grant Order Pursuant to Rule 56(d). *Pl.'s Mot. for Court to Grant Order Pursuant to Rule 56(d)* (ECF No. 562).

## I.  PROCEDURAL HISTORY

On July 1, 2013, James Stile filed a § 1983 suit alleging various constitutional violations and state tort claims against numerous defendants. *Compl.* (ECF No. 1). On August 14, 2014, Mr. Stile filed an Amended Complaint with authorization of this Court, except as to the "medical defendants" and corrections officer Simonds. *Am. Compl. Final* (ECF No. 92) (*Final Compl.*); *Order* (ECF No. 86). Since then, this case has been extended largely in part due to Mr. Stile's unconventional and repetitive filings. At the time of this order, this case has nearly 600 docket entries. The Court, therefore, will not review this case's entire procedural history but will focus on the procedural history relevant to the pending motions.

On August 15, 2017, a Magistrate Judge of this Court removed the stay on this case and ordered that all dispositive motions be filed by September 15, 2017. *Order Removing Stay/Establishing Mot. Deadline* (ECF No. 427). On September 13, 2017, Majority Defendants filed a motion for judgment on the pleadings and motion for summary judgment together with a statement of material facts. *Majority Defs.' Mot. for J. on the Pleadings and for Summ. J.* (ECF No. 431) (*Majority Mots.*); *Statement*

*of Material Facts in Support of Defs.' Mot. for Summ. J.* (ECF No. 432) (Majority DSMF). Also, on September 13, 2017, Defendants Keith Plourd and Jeffrey Jacques filed a motion for judgment on the pleadings and motion for summary judgment together with a statement of material facts. *Defs. Plourd's and Jacques's Mot. for J. on the Pleadings and for Summ. J.* (ECF No. 434) (*Plourd/Jacques Mots.*); *Statement of Material Facts by Defs. Keith Plourd and Jeffrey Jacques* (ECF No. 435) (Plourd/Jacques DSMF). On September 15, 2017, County Defendants filed a motion for judgment on the pleadings and motion for summary judgment together with a statement of material facts. *County Defs.' Mot. for J. on the Pleadings and for Summ. J.* (ECF No. 438) (*County Mots.*); *County Defs. Statement of Undisputed Material Facts in Support of Mot. for Summ. J.* (ECF No. 439) (County DSMF). On the same day, Defendant David Allen filed a motion for summary judgment together with a statement of material facts together with a statement of material facts. *Def. Allen's Mot. for Summ. J.* (ECF No. 440) (*Allen. Mot.*); *Def. David Allen's Statement of Material Facts in Support of Mot. for Summ. J.* (ECF No. 441) (Allen DSMF).

On December 7, 2017, Mr. Stile filed an opposition to majority defendant's motions for judgment on the pleadings and summary judgment along with his statement of fact. *Statement of Fact & Opp'n to Mot. for Summ. J.* (ECF No. 486). However, Mr. Stile subsequently represented that he could not completely respond to the various motions for summary judgment because he did not have certain evidence relevant to the dispositive motions, and on April 20, 2018, the Magistrate Judge

extended the time for him to complete his responses to Defendants' four motions until May 25, 2018. *Order on Mot. to Extend Time* (ECF No. 540).

On June 22, 2018, Mr. Stile filed a response in opposition to Defendants Plourd's and Jacques's motion for judgment on the pleadings and summary judgment. *Resp. & Mem. of Law in Opp'n to Defs. Plourd's and Jacques's Mot. for J. on the Pleadings and Summ. J.* (ECF No. 554) (*Resp. to Defs. Plourd's and Jacque's Mots.*). Defendants Plourd and Jacques filed their reply on June 29, 2018. *Reply to Pl.'s Opp'n to Mot. for J. on the Pleadings and Summ. J. by Defs. Plourd and Jacques* (ECF No. 556) (*Defs. Plourd and Jacques Reply*).

On July 5, 2018, Mr. Stile filed a response and affidavit to County Defendants' motions. *Aff. and Resp. to County Defs.' Mot. for J. on the Pleadings and for Summ. J.* (ECF No. 561) (*Resp. to County Defs.' Mots.*). Mr. Stile filed another response on July 16, 2018. *Resp. to County Defs.' Mot. for J. on the Pleadings and for Summ. J.* (ECF No. 566) (*Resp. to County Defs.' Mots. II*). County Defendants filed a reply on July 30, 2018. *County's Reply to Pl.'s Resp. to Mot. for J. on the Pleadings & Mot. for Summ. J.* (ECF No. 575) (*County Defs.' Reply*).

On July 16, 2018, Mr. Stile filed a response in opposition to David Allen's motion for summary judgment. *Pl.'s Resp. to Def. Allen's Mot. for Summ. J. with Incorporated Mem. of Law* (ECF No. 567) (*Pl.'s Resp. to Def. Allen's Mot.*). Defendant Allen filed a reply on July 26, 2018. *Def. David Allen Reply Mem. of Law in Support of Mot. for Summ. J.* (ECF No. 570) (*Def. Allen's Reply*).

On July 30, 2018, Mr. Stile filed a response to Majority Defendant's motion for judgment on the pleadings and summary judgment. *Resp. to Majority Defs.' Mot. for J. on the Pleadings and Summ. J.* (ECF No. 576) (*Pl.'s Majority Resp.*). On August 9, 2018, Majority Defendants filed a reply to Mr. Stile's response to their motions. *Defs.' Reply Mem. of Law in Support of Their Mot. for J. on the Pleadings & Summ. J.* (ECF No. 587) (*Majority Defs. Reply*). Mr. Stile filed a supplemental response to his own response to Majority Defendants' motions on August 20, 2018, and Majority Defendants filed a supplemental reply to Mr. Stile's supplemental response on August 31, 2018. *Pl.'s Suppl. Resp.* (ECF No. 589) (*Pl.'s Supp. Majority Resp.*); *Defs. Suppl. Reply* (ECF No. 592); (*Majority Suppl. Reply*).

Also before the Court is Mr. Stile's motion to strike video exhibits filed on March 1, 2018, and a separate motion for a ruling on that motion, filed on August 6, 2018. *Pl.'s Mot. to Strike Video Exs.* (ECF No. 499); *Mot. for Ruling on Mot. to Strike* (ECF No. 583). Mr. Stile also filed a motion for order pursuant to Rule 56(d). *Pl.'s Mot. for Court to Grant Order Pursuant to Rule 56(d)* (ECF No. 562).

## II.   LEGAL STANDARD

### A.   Summary Judgment Standard[3]

---

[3]     All Defendants, except David Allen, filed motions for judgment on the pleadings in conjunction with their motions for summary judgment. As the First Circuit noted, "the fate of [a motion for judgment on the pleadings] will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Trust Co., v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004) (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRACTICE AND PROCEDURE § 1367, at 509-10 (2d ed. 1995)). Here, Mr. Stile and the Defendants have disputed most of the essential facts set forth in the Complaint. Accordingly, pursuant to Federal Rule of Civil Procedure 12(d), the Court treated the motions for judgment on the pleadings as motions for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.").

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)). A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy,* 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## B.    Local Rules 7(b) and 56 and Pro Se Prisoner Litigants

---

As the Defendants also filed accompanying motions for summary judgment, the Court effectively resolved each motion for judgment on the pleadings on the basis of the accompanying motion for summary judgment. Whether technically the Court is ruling on the motions for judgment on the pleadings converted into motions for summary judgment or on the motions for summary judgment themselves is academic. To clarify the record, the Court is dismissing without prejudice each of the motions for judgment on the pleadings and has grounded its disposition on the pending motions for summary judgment.

The various unorthodox filings and numerous extensions in this case have made the resolution of the pending motions unnecessarily complicated and obtuse. Local Rule 7(b) states that "[u]nless within 21 days after the filing of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection." Local Rule 56 section (c) provides that a party opposing a motion for summary judgment shall submit its own statement of material facts in which it admits, denies, or qualifies the movant's statement of material facts, and section (f) provides that facts shall be deemed admitted if not properly controverted. Local Rule 7(b) has been extensively applied to a variety of motions and the Court enjoys "broad latitude" in administrating its application. *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 5-6 (1st Cir. 2012). In *NEPSK,* the First Circuit discussed how a court should approach a motion for summary judgment when an opposing party failed to follow a local rule. *Id.* at 5-9. The First Circuit concluded that a court may not simply grant a motion for summary judgment because an opposing party failed to properly respond, but must instead "determine whether summary judgment is appropriate." *Id.* at 8 (internal quotations omitted). However, "[b]y failing to file the required response within the time prescribed by the applicable local rule, the non-moving party waives the right to controvert the facts asserted by the moving party in the motion for summary judgment and the supporting materials accompanying it." *Id.* at 8 (quoting *Jaroma v. Mass*ey, 873 F.2d 17, 21 (1st Cir. 1989)).

At the same time, courts are generally more relaxed about compliance with procedural rules when a litigant is acting pro se. In *Clarke v. Blais*, 473 F. Supp. 2d (D. Me. 2007), Judge Hornby thoughtfully outlined the competing interests courts encounter when dealing with ineffective rule compliance by pro se litigants. In *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182-84 (D. Me. 2007), this Court confronted the same questions and stated "[t]here are no easy solutions" to these issues. Even so, the First Circuit has written that pro se litigants are not exempt from local and federal rules. *See Rivera v. Riley*, 209 F.3d 24, 27–28 & n.2 (1st Cir. 2000).

In this case, the Defendants filed their dispositive motions in mid-September of 2017. The Court granted in part Mr. Stile's motion for an extension of time to respond to these motions and set the deadline as November 15, 2017. *Order* (ECF No. 444). Mr. Stile subsequently filed four partial responses to Defendants' statements of material facts nearly a month after the Court's imposed deadline on December 12, 2017. *Resp. to Statement of Fact* (ECF No. 483) (*Resp. to Statement of Fact I*); *Resp. to Statement of Fact* (ECF No. 484) (*Resp. to Statement of Fact II*); *Resp. to Statement of Fact* (ECF No. 485) (*Resp. to Statement of Fact III*); *Resp. to Statement of Fact* (ECF No. 486) (*Resp. to Statement of Fact IV*). In his letter accompanying these responses, Mr. Stile recognized that the Court extended his response time to November 15, 2017, but stated that given the voluminous pleadings, and other issues, he could not meet that deadline. *Letter* at 2 (ECF No. 487). Then, after a telephonic conference on February 14, 2018, the Magistrate Judge extended the time for Mr. Stile to file his response memoranda to Defendants' motions until April 20, 2018.

*Procedural Order* (ECF No. 497). Subsequent to this order, but before the April 20 deadline, Mr. Stile filed fourteen motions and letters with the Court.

On April 20, 2018, the Court again extended Mr. Stile's response time to Defendants' dispositive motions until May 25, 2018. *Order on Mot. to Extend Time* (ECF No. 540). Mr. Stile eventually filed a response to Defendants Plourd's and Jacques' motions on June 22, 2018, almost a full month after the Court's deadline. *Resp. to Defs. Plourd's & Jacque's Mots.* (ECF No. 554). Mr. Stile filed a response to Defendant's Allen's Motion for Summary Judgment on July 16, 2018, nearly two months after the response deadline. *Pl.'s Resp. to Def. Allen's Mot.* (ECF No. 567). Mr. Stile also filed an Affidavit pertaining to County Defendants' motions on July 5, 2018, and his response to their motions on July 16, 2018.[4] *Resp. to County Defs.' Mots.* (ECF No. 561); *Resp. to County Defs.' Mots. II* (ECF No. 566). Lastly, Mr. Stile filed his response to Majority Defendants' motions on July 30, 2018, with a supplemental filing on August 20, 2018. *Resp. to Majority Defs.' Mot. for J. on the Pleadings and Summ. J.* (ECF No. 576); *Pl.'s Suppl. Resp.* (ECF No. 589).

As the Court stated in its order entered on September 4, 2018, this case has been pending for over five years and Mr. Stile elected to name dozens of Defendants. *Order on Mot. For Judicial Intervention and for Extension of Time and on Mot. to a Partial Resps. and to Allow the R. to Remain Open, and Mot. for Ct. to Obtain Bate Stamped Materials from Defs.' that Pl. Cited in his Resps. to Dispositive Pleadings* at

---

[4] On July 17, 2018, Mr. Stile filed a separate Affidavit pertaining to his responses to County Defendants' motions, Defendant Allen's motion, and Defendants Jacque's and Plourd's motion. *Aff. of James Stile* (ECF No. 569).

14 (ECF No. 594). Mr. Stile's responses to Defendants' dispositive motions have been unorthodox, untimely, and at times incoherent. If the Court ruled on the pending motions for summary judgment based on Mr. Stile's submissions in response to the dispositive motions and if it applied the rules strictly against him, the Defendants would prevail in every motion, because Mr. Stile failed to comply with the Local Rules in presenting his responses.

Nevertheless, in an effort to be fair (perhaps excessively so) to Mr. Stile, the Court treated his two complaints--the initial and the amended--as verified complaints, which at the summary judgment stage may be viewed as affidavit equivalents, to frame his position in this suit. *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991); *Demmons*, 484 F. Supp. 2d at 182. This District has generally considered prisoner affidavits even if noncompliant with Local Rule 56. *See e.g.*, *Clarke v. Blais*, 473 F. Supp. 2d 124, 130 (D. Me. 2007). Mr. Stile's two complaints are notarized and contain the words "sworn to before me" above the notary's stamp. *See Compl.* at 23; *Final Compl.* at 31. The Court considers this sufficient for a verified complaint and treats both as affidavit equivalents. At the same time, the Court will consider only specific facts outlined in Mr. Stile's complaints, and will not consider conclusory allegations that do not make a factual showing that there is a genuine issue for trial. *Sheinkopf*, 927 F.2d at 1262; *Sullivan v. City of Springfield*, 561 F.3d 7, 24 (1st Cir. 2009) (citation omitted) (Courts will "ignore conclusory allegations, improbable inferences, and unsupported speculation"); *Perry v. Ryan*, No. 90–1826,

1991 U.S. App. LEXIS 7098, at *7, 940 F.2d 646 (1st Cir. 1991) (discussing Federal Rule of Civil Procedure 56(e)).

## III. STATEMENT OF FACTS

### A. The Criminal Case

In *United States v. James Stile*, a federal grand jury charged Mr. Stile with, and he ultimately pleaded guilty to, Robbery of a Controlled Substance from a DEA Registered Pharmacy. *Indictment* (ECF No. 8 – No. 1:11-cr-00185-JAW); *Min. Entry* (ECF No. 541 - No. 1:11-cr-00185-JAW). On May 29, 2015, this Court sentenced Mr. Stile to 120 months incarceration, five years supervised release, a special assessment of $100.00, restitution in the amount of $13,306.93, and no fine. *J.* (ECF No. 579 - No. 1:11-cr-00185-JAW).

Mr. Stile first appeared in this Court on the criminal charges on November 2, 2011 following the execution of a federal arrest warrant. *Arrest Warrant Returned Executed* (ECF No. 20 - No. 1:11-cr-00185-JAW). At a November 8, 2011, detention hearing, the Magistrate Judge ordered Mr. Stile detained pending trial, and Mr. Stile's pretrial detention continued at the Somerset County Jail, where he had been held beginning September 13, 2011. *Order of Detention* (ECF No. 33 - No. 1:11-cr-00185-JAW); *Final Compl.* ¶ 3; Majority DSMF ¶¶ 1-2; County DSMF ¶ 17; Plourd/Jacques DSMF ¶ 1; Allen DSMF Intro. On January 25, 2012, Mr. Stile's criminal defense counsel moved to enforce the order of detention, asserting that Mr. Stile had been denied the ability to communicate with counsel by phone or written

correspondence. *Mot. to Enforce Order of Detention* (ECF No. 45).[5] Mr. Stile's counsel

asked that the Court order Mr. Stile moved to another facility. *Id.* at 2.

In an affidavit in support of the motion, Mr. Stile asserted that he suffered

from degenerative disc disease, with a medical history of two discectomies and one

laminectomy, and that his spinal condition was aggravated on December 20, 2011

when corrections officers separated Mr. Stile and another inmate during an

altercation in which Mr. Stile attacked the other inmate.[6] *Id.* Attach. *Decl. of James

Stile I.* ¶¶ 3-4; Majority DSMF ¶¶ 6-7. Mr. Stile further stated that he was placed

in administrative segregation due to the altercation with the prisoner, and that he

began refusing his meals on December 26, 2011 because he did not feel safe given

that an officer who served his meal tray was a relative of the inmate with whom Mr.

Stile fought. *Id.* Attach. *Decl. of James Stile I.* ¶¶ 4, 6.

## B.    Extractions at Samoset County Jail[7]

---

[5]     At his deposition, Mr. Stile's counsel in the criminal matter testified that he went to the Somerset County Jail on January 16, 2012, to visit Mr. Stile, and was informed that he could not meet with Mr. Stile because, according to jail personnel, Mr. Stile stated he was unable to walk to the visitation room. *Resp. in Opp'n to Mot. for J. on the Pleadings & for Summ. J.* Attach. 13, Ex. B (ECF No. 566-13). Counsel had last spoken with Mr. Stile by phone on December 23, 2011. Id. (ECF No. 566-15). Counsel returned to the jail on January 24, 2012, and had a non-contact meeting with Mr. Stile, at which meeting Mr. Stile appeared in a wheelchair. *Resp. to Def. Allen Mot. for J. on the Pleadings & for Summ. J.* Attach. 2, Ex. B1-B2 (ECF No. 567-2). The next day Counsel moved to enforce the order of detention.

[6]     Following a January 30, 2011 hearing on the motion to enforce order of detention, the U.S. Marshal informed the Court that it had arranged for Mr. Stile to be transferred to the Cumberland County Jail. After his transfer, Mr. Stile returned to Somerset County Jail on a "couple" occasions, but only for a short duration; the last on September 30, 2013. Majority DSMF ¶ 15.

[7]     The Court notes it has already conducted an extensive review of all of the DVDs relevant to the claims at issue. *Order on Mot. For Judicial Intervention and for Extension of Time and on Mot. to a Partial Resps. and to Allow the R. to Remain Open, and Mot. for Ct. to Obtain Bate Stamped Materials from Defs.' that Pl. Cited in his Resps. to Dispositive Pleadings*, at 14 (ECF No. 594).

Mr. Stile was initially classified as a medium security inmate on September 16, 2011, and this classification remained in effect on October 3, 2011 and December 13, 2011. Majority DSMF ¶ 5; Plourd/Jacques DSMF ¶ 1; Allen DSMF Intro. On December 20, 2011, Mr. Stile was involved in an altercation with another inmate, Ernest Almeida, which resulted in Mr. Stile being taken to the Special Management Unit. *Final Compl.* ¶ 10; Majority DMSF ¶¶ 6, 8; County DSMF ¶ 20; Plourd/Jacques DSMF ¶ 1; Allen DSMF Intro. Inmate Almeida is a relative of Defendant Corrections Officer Almeida. *Final Compl.* ¶ 11. The Special Management Unit is located in A-pod and is where inmates on administrative segregation and disciplinary segregation are housed, in addition to inmates classified as maximum security. Majority DMSF ¶ 8; County DSMF ¶ 18; Plourd/Jacques DSMF ¶ 1; Allen DSMF Intro. A decision to return an inmate from A-Pod to general population is based on the behavior and statements of the inmate while in the unit and/or or recommendations by medical staff. County DSMF ¶ 21. Either the jail administrator or the assistant jail administrator would make this decision, after consulting with medical and A-Pod staff. *Id.* ¶ 22. Mr. Stile was subjected to numerous strip searches while at Somerset County Jail. *Final Compl.* ¶ 12.

The next day, on December 21, 2011, Mr. Stile's classification was changed to maximum security. Majority DMSF ¶ 9; Plourd/Jacques DSMF ¶ 1; Allen DSMF Intro. For about thirty-nine days, Mr. Stile did not eat his meals for fear that they were being tampered with and he experienced mental and physical issues. *Final Compl.* ¶ 14. Mr. Stile previously observed Defendants Almedia and Meunier spit in

his food tray before handing him the tray.  *Id.* ¶ 13.  Mr. Stile also heard Defendant

Meunier state that there would be shards of glass in his food.[8]  *Id.* ¶ 13.  When Mr.

Stile first refused his meals, he was also reclassified as an inmate requiring a suicide

watch, and was required to visit the medical department daily (later twice daily or

once per shift) so that his "vitals" could be monitored.[9]  Majority DSMF ¶¶ 12, 620-

22; County DSMF ¶ 9, Ex. I; Plourd/Jacques DSMF ¶ 1; Allen DSMF Intro.

      The first of several extractions occurred on December 26, 2011.[10]  On the

morning of December 26, Mr. Stile refused an order to relinquish his bedding and

blankets.  *Final Compl.* ¶ 15; Majority DSMF ¶ 252.[11]  Mr. Stile says when he refused,

he was sprayed with a chemical agent.  *Final Compl.* ¶ 15.  Mr. Stile then

unsuccessfully tried to set off the sprinklers.  Majority DSMF ¶ 254.  The CERT Team

was assembled to remove Mr. Stile from his cell to give him medical treatment and

move him to another cell.  *Id.* ¶ 256.  Before entering his cell, Defendant Bugbee asked

Mr. Stile again if he wanted to cuff up; Mr. Stile refused.  *Id.* ¶ 261.  Mr. Stile had

---

[8]      In his Amended Complaint, Mr. Stile alleges he was unable to reach the water in his sink, and unsuccessfully asked the Defendants to hydrate him.  *Final Compl.* ¶ 32.  A review of the record confirms that Mr. Stile drank various liquids while on his hunger strike.

[9]      Mr. Stile's refusal to eat was classified as a "hunger strike" and that strike lasted approximately thirty-nine days.  Majority DSMF ¶ 12.  The County Defendants attached to their motion a copy of the Jail's Emergency Response – Hunger or Medication Strike Policy, Policy 4.18.

[10]    Before this date on December 22, 2011, Mr. Stile asserts that he cell was searched pursuant to a federal search warrant but that no warrant was provided to him and that all of his materials were seized and boxed up.  *Final Compl.* ¶ 11.  Mr. Stile asserts that he was also stripped of his clothes and was left naked in his cell.  *Id.*  Defendant Plourd observed and videotaped this search, which was conducted by a Federal ATF agent.  Plourd/Jacques DSMF ¶ 3. The Court views Mr. Stile's verified complaints in the light most favorable to his theory of the case that is consistent with the record.  *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).  Therefore, the Courts states Mr. Stile's version of these events insofar as no search warrant was presented to him and his belongings and clothes were seized.

[11]    Defendants assert that Mr. Stile refused to make his bed.  Majority DSMF ¶ 252.  Because the Court must take all reasonable inferences consistent with the record in favor to Mr. Stile, it states his version of this event.

pinned his mattress up against his cell door. *Id.* ¶ 260. Upon entering the cell, Mr.

Stile was shocked with an electric shield at various points. *Id.* ¶ 263-64; *Final Compl.*

¶ 15.[12] Mr. Stile was given the clothes he was wearing previously when the chemical

agent was deployed. *Final Compl.* ¶ 15.[13] A nurse came to examine Mr. Stile and

offer treatment, but he did not respond to her. *Id.* ¶ 267. Mr. Stile walked on his own

power to a chair in the dayroom in A-pod. *Id.* ¶ 266. The video of the extraction ends

with a visual strip search. *Id.* ¶ 268.[14] The video of that extraction reflects that Mr.

Stile walked on that date, both before and after the extraction. Majority DSMF ¶

266.[15]

The next extraction occurred on December 31, 2011. *Id.* ¶ 269. Mr. Stile

refused to come to the door and cuff up. *Id.*; Plourd/Jacques DSMF ¶ 9. The electric

shield was used to contain Mr. Stile but not deployed. Majority DSMF ¶ 273;

Plourd/Jacques DSMF ¶ 12. Defendant Plourd, without a prior verbal warning, used

the handheld electronic device after Mr. Stile refused several orders to stand up.

---

[12]     Mr. Stile asserts that other devices were deployed against him and that he was beaten with fists. *Final Compl.* ¶ 15. The record only shows that the electronic shield was deployed against Mr. Stile. Majority DSFM ¶ 262-64, Video Ex. 1.
[13]     Mr. Stile claims he was denied a request for clean clothing. *Id.* The video does not show such a denial. Majority DSFM ¶ 268, Video Ex. 1. The Majority Defendants assert that Mr. Stile was given new clothes after he was placed in an A-pod dayroom. *Id.* The video for this extraction does not clearly show whether the clothes given to Mr. Stile were new or the same clothes he had at the time of extraction. Because the Court must take all reasonable inferences consistent with the record in favor to Mr. Stile, it accepts his version of this event.
[14]     During the first extraction, Mr. Stile was on his feet carrying his foam mattress, and Mr. Stile forcibly attempted to prevent the officers from entering his cell. Majority DSMF ¶¶ 255, 262; Video Ex. 1. Defendant Meunier shielded officers from Mr. Stile with the use of a shield device capable of emitting an electrical shock. *Id* ¶¶ 263-264. Mr. Stile's assertive use of his mattress, for whatever purpose, demonstrates that he was physically capable of coming to the door of his cell to cuff up. Indeed, even after being restrained on the floor and carried to and from the medical department, Mr. Stile can be seen standing and walking in his new cell, the "camera cell." *Id.* ¶¶ 266, 268; Video Ex. 1.
[15]     Mr. Stile asserts that his inability to walk arose sometime after a cell extraction that occurred on December 26, 2011. *See Final Compl.* ¶¶ 15-18.

Majority DSMF ¶ 275-76; Plourd/Jacques DSMF ¶¶ 10-11.[16]  Mr. Stile was placed in handcuffs and leg irons and was taken first to the medical department and then to be weighed.  Majority DSMF ¶ 269, 274; Plourd/Jacques DSMF ¶ 9.  The Defendants carried Mr. Stile to the medical department.[17]  Majority DSMF ¶ 272; Video Ex. 2. Upon Mr. Stile's arrival at medical, a nurse evaluated him.  *Id.* ¶ 278.  While in medical, Mr. Stile told the officers, "You hurt me Monday," evidently a reference to the December 26, 2011 extraction.[18]

On January 1, 2012, Mr. Stile was extracted from his cell, taken to the medical department, and then to the laundry room to be weighed by Defendants Herrera, Libby, Lightbody, and Soares with the supervision of Defendant Munn.  *Id.* ¶¶ 279-282.  Similar extractions occurred on January 4 and 5, 2012 by different groups of corrections officers.  *Id.* ¶¶ 285, 287, 293, 295, 304, 306, Video Exs. 3, 4 and 35.  On these dates, Mr. Stile was transported from the medical department to the laundry room and from the laundry room to his cell in a wheelchair.  *Id.* ¶¶ 290, 301, 319.

Two extractions occurred on January 5.  *Id.* ¶¶ 292, 301, 303.  In each instance, Defendants first offered Mr. Stile the option to present himself at the door to be handcuffed before the officers entered, but Mr. Stile continued to deny the ability to walk to the door.  *Id.* ¶¶ 298, 309.  In the first instance, Defendant Plourd deployed the handheld electronic device without a prior verbal warning.  *Id.* ¶¶ 298-99; Plourd/Jacques DSMF ¶¶ 13-15.  If unsuccessful in getting Mr. Stile to walk, the

---

[16]    Mr. Stile had two previous back surgeries which he never fully recovered from.  *Final Compl.* ¶ 18.
[17]    Plaintiff is unclothed in the video, and officers placed a turtle suit on him for the transport.
[18]    Video Ex. 2.

supervising officer would tell the present corrections officers to carry him out. *Final Compl.* ¶ 20.[19]

In the second instance, Mr. Stile was handcuffed and shackled while he was lying down on the floor, and was lifted to a kneeling position. Majority DSMF ¶¶ 307-08; Plourd/Jacques DSMF ¶¶ 51-52. Mr. Stile was ordered to stand several times, but he refused, and was told he would be shocked if continued to refuse to stand. Majority DSMF ¶¶ 309-11; Plourd/Jacques DSMF ¶¶ 53-54. Defendant Fails said he would give Mr. Stile three warnings, and if he failed to stand by the third warning, then Defendant Fails would deploy an electronic device. *Final Compl.* ¶ 19; Majority DSMF ¶¶ 309-11, Video Ex. 35. Defendant Fails eventually deployed the handheld electronic device twice to Mr. Stile's upper right thigh, and after Mr. Stile continued to refuse to stand, Defendant Fails deployed the device once more. Majority DSMF ¶¶ 313-14; Plourd/Jacques DSMF ¶¶ 56-57.

One extraction occurred on each day thereafter until January 11.[20] Majority DSMF ¶¶ 323, 327, 332, 337, 343, 350. On January 10, Mr. Stile was placed into the shower in his restraint chair because he had not showered in several days. *Id.* ¶ 355; Plourd/Jacques DSMF ¶ 26. The method in which Mr. Stile was placed in and taken out of the restraint chair caused him pain because correction officers would force his face downwards towards his knees. *Final Compl.* ¶ 21. He was also hurt when

---

[19]     Mr. Stile states the supervising officer would tell the corrections officers to "drag him out"; however, a review of the video exhibits does not support this characterization.

[20]     On January 9, 2012, Defendants began to use a wheeled restraint chair to transport Mr. Stile. Majority DSMF ¶ 330. According to Mr. Stile, the change did not prevent certain officers from hurting him by moving him in the chair in a way that aggravated Mr. Stile's spinal condition. *Final Compl.* ¶ 21; *e.g.*, January 9, 18, 21, and 24, 2012 videos.

Defendants used the arm bar maneuver. *Id.* When placed in the turtle suit, Mr. Stile's genitals were partially exposed to female staff.[21] *Id.* ¶ 24.

When Mr. Stile was placed in the shower, he spit at Defendant Plourd and hit him in the right arm. Majority DSMF ¶ 356; Plourd/Jacques DSMF ¶ 28. However, on one occasion Defendants Hayden and Rivard took Mr. Stile in a standard wheelchair without incident. *Final Compl.* ¶ 30.

From January 10 through January 19, there were typically two extractions each day. Majority DSMF ¶¶ 350, 359, 366, 372, 379, 386, 393, 400, 406, 416, 425, 433, 439, 446, 455, 462, 469, 476, 483, 490.[22] There was one extraction on January 20 (*Id.* ¶ 496), two on January 21 (*Id.* ¶¶ 503, 510), three on January 22 (*Id.* ¶¶ 517, 524, 531), and two on January 23. *Id.* ¶¶ 538, 546. From January 24 through January 29, there was one extraction each day. *Id.* ¶¶ 555, 564, 572, 579, 586, 592.[23]

### C. Other Issues at Somerset County Jail

Defendant Campbell told other correction officers that Mr. Stile must walk on his own accord to be allowed to use the telephone. *Final Compl.* ¶ 16. Defendant Campbell also turned away Mr. Stile's attorney and said he must walk on his accord to see his attorney. *Id.* Mr. Stile requested access to clergy and to attend religious

---

[21] The Court qualifies this statement insofar as the turtle suit covered Mr. Stile's genitals but not completely depending on the angle of a given individual.

[22] During the first extraction on January 14, 2012, Mr. Stile attempted to kick Defendant Kelley several times and threatened her. Majority DSMF ¶¶ 412-14. Defendant Kelley stepped on the chain between the shackles on Mr. Stile's feet when he was being placed in the restraint chair and when he was being taken out of the restraint chair, which does not cause pressure on the legs or feet unless the inmate is struggling. *Id.* ¶ 413.

[23] Plaintiff saw his counsel on January 24, 2012.

services.  *Id.* ¶ 34.  While in SMU, Mr. Stile was not allowed his eyeglasses, which prevented him from reading disciplinary papers or any newspapers.  *Id.* ¶ 35.

Mr. Stile asked Defendant Libby to make an anonymous phone call to his attorney or the press and divulge the abuses he was suffering.  *Id.* ¶ 20.  In September of 2012, Mr. Stile was not given his medication for about six days.[24]  *Id.* ¶ 36.  During a transport from Somerset County Jail to Cumberland County Jail, Defendants Andrews and Kline lost more than 1,000 pages of Mr. Stile's legal documents, pertaining to his civil and legal cases as well as to his filed grievances with the Somerset County Jail.  *Id.* ¶ 39.[25]

### D.    David Allen

Defendant Allen was the Somerset County Jail administrator from September 2011 to February 2013.  Allen DSMF ¶ 1.  During Mr. Stile's time at Somerset County Jail, Defendant Allen had no direct contact with Mr. Stile, meaning he had no involvement in Mr. Stile's extractions, conducted no strip searches, did not place Mr. Stile in a restraint chair, conducted no searches of his cell, and was not involved in Mr. Stile's disciplinary hearings or access to his attorney.  *Id.* ¶¶ 2-15.  Defendant Allen was not aware of any reason for Mr. Stile to be extracted except to check his health status.  *Id.* ¶ 16.  Defendant Allen also did not have any advanced knowledge

---

[24]     Mr. Stile asserts that he routinely asked for an MRI to assess his injuries.  *Final Compl.* ¶ 16. The record illustrates Mr. Stile denied medical evaluations when offered during his extractions, and the Court excludes this assertion as incomplete and misleading.

[25]     Majority Defendants state that they initially failed to drop off one of Mr. Stile's three bags of property when he was transported to Cumberland County Jail as they headed to New Hampshire, but they dropped off the third bag on their way back.  Majority DSMF ¶¶ 26, 150. Because the Court must take all reasonable inferences consistent with the record in favor to Mr. Stile, it accepts his version of this event.

of the deployment of the electronic shield, the handheld electronic device, or OC spray with regard to Mr. Stile, and was not aware of any use of these instruments contrary to jail policies. *Id.* ¶¶ 17-18. Similarly, Defendant Allen was not aware of corrections officers ever engaging in the various other actions complained of Mr. Stile's Complaint in a manner contrary to jail policies or for any reason not justified by jail policies or legitimate penological considerations. *Id.* ¶¶ 19-23, 26-28, 30.[26]

### E. Barry Delong

Defendant Barry Delong was the Sheriff of Somerset County while Mr. Stile was at the Somerset County Jail. County DSMF ¶ 1. Defendant Delong retired on December 31, 2014, and at that time, neither Somerset County nor Somerset County Jail had received notice of any state tort claims against the County, Defendant Delong, or any other county employees. *Id.* ¶ 2. During Defendant Delong's tenure, however, there were meetings every day at shift changes in which jail employees exchanged information regarding inmates' issues, including their health or medical needs. *Id.* ¶ 15. Once a week there was a meeting of administrative staff and supervisors called "Grand Rounds" to discuss all inmate issues, including any need to address inmates' medical needs with the medical staff. *Id.* ¶ 16.

While Defendant DeLong had overall responsibility for the jail, the day-to-day were handled by the jail administrator. *Id.* ¶ 23.[27] Defendant DeLong never had any

---

[26]     Defendant Allen did not order, and was not aware, of Mr. Stile being forced to lie in his own urine and did not order Mr. Stile placed in the shower. *Id.* ¶¶ 24-25. Nor did Defendant Allen order, or was otherwise aware of, any burden on Mr. Stile's access to his attorney. *Id.* ¶ 29.

[27]     Defendant Delong responsibilities also included patrol division, criminal division, court security, service of process, and other general administrative duties. *Id.* ¶ 24.

personal contact with Mr. Stile during his incarceration. *Id.* ¶ 25. Defendant Delong did not witness or have any personal knowledge of any cell extractions of Mr. Stile, including any alleged force used against him during the extractions. *Id.* ¶ 26. Defendant Delong had no knowledge of any grievances or appeals filed by Mr. Stile. *Id.* ¶ 28. While Mr. Stile was incarcerated at Somerset County Jail, Defendant DeLong had not been made aware of prior claims of any widespread problems regarding the use of excessive force against inmates, inappropriate use of approved weapons, denial of medical care, denial of access to attorneys, strip searching beyond that authorized by the jail's policies, inappropriate searches of inmates' cells, inappropriate seizure of inmates' legal papers, denial of access to religious services, denial of due process in conjunction with disciplinary hearings, deficiencies in training or supervision of jail employees, or jail employees' adherence to policies governing these matters. *Id.* ¶ 44.

### F. Disciplinary Hearings

On October 12, 2011, Defendant Garling conducted two disciplinary hearings concerning Mr. Stile, during which he was present for both hearings. Majority DSMF ¶ 100. Mr. Stile appealed one of these hearings. *Id* ¶ 619. On January 12, 2012, Defendant Garling conducted a disciplinary hearing regarding Mr. Stile and when he went to Mr. Stile's cell door and asked Mr. Stile if he wanted to be present for the hearing, Mr. Stile refused. *Id.* ¶ 101.

On January 19, 2012, Lt. Jacques conducted a disciplinary hearing, 12-48, regarding Mr. Stile; Mr. Stile refused to be present for this hearing, and Mr. Stile did

not appeal the hearing results. Plourd/Jacques DSMF ¶ 72. On May 23, 2013, Defendant Jacques conducted three disciplinary hearings, 13-459-DI, 13-460-DI and 13-464-DI, regarding Mr. Stile; Mr. Stile was not present because he was not in the facility, and he did not appeal the results of those hearings.[28] *Id.* ¶ 73.

On September 26, 2012, Defendant Plourd conducted two disciplinary hearings, 12-781-DI and 12-776-DI, regarding Mr. Stile; Mr. Stile was not present because he was not in the facility.[29] Plourd/Jacques DSMF ¶ 31. Mr. Stile appealed these two hearings around April 2013. Majority DSMF ¶ 619; Plourd/Jacques ¶ 33. The disciplinary hearings were held without Mr. Stile being present, and so he was unable to present his own case. *Final Compl.* ¶ 33. In his absence at one of the hearings, he was assessed penalties of disciplinary segregation in SMU and monetary fines over $500, which were deducted from his inmate account. *Id.*

### G. Somerset County Jail Policies

At all times relevant to Mr. Stile's claims, Somerset County Jail had policies in effect concerning responding to various emergencies. County DSMF ¶9, Exs. G-J. Somerset County Jail also had policies in effect at the time of Mr. Stile's claims pertaining to use of force, administrative and disciplinary segregation, classification of prisoners, cell extractions, and the use of restraints. *Id.* ¶ 10.[30] Somerset County Jail employed a full time training officer and numerous academy certified instructors

---

[28]     These are the only hearings Defendant Jacques conducted regarding Mr. Stile. *Id.* ¶ 74.

[29]     This was the only disciplinary hearings Defendant Plourd conducted regarding Mr. Stile. Jacques/Plourd DSMF ¶ 32.

[30]     Annually, the correctional administrator or compliance officer is required to review the jail's operations and programs to ensure compliance with DOC-approved policies and procedure. *Id.* ¶ 10.

to ensure that all jail employees were trained regarding all SCJ policies and procedures. *Id.* ¶ 12.[31]

All inmates are given a copy of the Inmate Handbook which describes the grievance procedure and also advises them that the Prison Litigation Reform Act requires they exhaust all administrative remedies before they can file suit alleging violations of federal law. *Id.* ¶ 29. Under the jail's grievance policy, an inmate must first file a Level 1 grievance. Majority DSMF ¶ 600; *Id.* ¶ 30. If an inmate is not satisfied with the response to a Level 1 grievance, the inmate may file a Level 2 grievance; the final step in the grievance procedure is to appeal to the Maine Department of Corrections for external review. Majority DSMF ¶¶ 601-02; County DSMF ¶ 31. Mr. Stile only filed one Level 2 grievance at the Jail, which was received by the Jail on October 17, 2011, and concerned problems with medical staff. Majority DSMF ¶ 603; County DSMF ¶ 36. Mr. Stile only filed one grievance with the Maine Department of Corrections, dated May 8, 2014, concerning alleged assaults and batteries during December 2011 and January 2012. Majority DSMF ¶ 605; County DSMF ¶ 37.

Somerset County Jail policy 10.1, entitled "Inmate Discipline", implements an inmate discipline system to hold inmates accountable for misconduct and to encourage acceptable behavior; policy 10.1 provides a list of disciplinary penalties that can be imposed upon inmates for the violation of a Somerset County Jail policies.

---

[31] The required training includes, but is not limited to, training with respect to the use of chemical and electrical devices, the use of non-deadly force in general, and the protocol for responding to emergencies or medical needs of inmates, such as hunger strikes.

County DSMF ¶ 32. Under this policy, an inmate may appeal the decision of a disciplinary hearing officer to the jail administrator within ten days of the disciplinary hearing. *Id.* ¶ 33. Mr. Stile appealed only three disciplinary hearings while at Somerset County Jail. Majority DSMF ¶ 619; *Id.* ¶ 35.[32]

Somerset County Jail policy 12.16 is applicable to inmates with disabilities and requires inmates to file a complaint with medical staff regarding any service issues. County DSMF ¶ 39. Under this policy, an inmate is required to submit a brief written description of the complaint and submit it to any staff member. *Id.* ¶ 40. The medical staff reviews the complaint and provides a written reply within five business days with copies of the complaint and the reply forwarded to the medical director. *Id.* ¶ 41.

The Jail also has policies governing searches, including strip searches, and provides the conditions that must be present for an inmate to be subject to a strip search. *Id.* ¶ 42. Under these policies, an inmate may be subject to a strip search following a contact visit and there is no exception provided under the Policy for when an inmate meets with his or her attorney. *Id.* ¶ 43.

## H.    Insurance Coverage

Somerset County has liability coverage on its behalf and on behalf of its employees through the Maine County Commissioners Association Self-Funded Risk Management Pool, a self-insured governmental risk pool, from 2011 to 2013. County

---

[32]    These were for hearings conducted on October 12, 2011, by Defendant Garling for infraction # 11-616-DI, and on September 26, 2012, by Defendant Plourd for infraction #s 12-776-DI and 12-781-DI. Majority DSMF ¶ 619. Mr. Stile appealed the two disciplinary hearings conducted by Defendant Plourd around April 12, 2013. Plourd/Jacques DSMF ¶ 33.

DSMF ¶¶ 3, 5.[33]  The Maine County Commissioners Association Self-Funded Risk Management Pool provides coverage to the County for claims arising under state tort law only if the entity or its employees did not enjoy immunity under state law.  *Id.* ¶ 4.

## IV.     SUMMARY OF THE MOTIONS

### A.     Mr. Stile's Amended Complaint

Mr. Stile makes a variety of constitutional and tort-related claims against the Defendants.  Mr. Stile asserts he was stripped of his clothing and lacked bedding while in the Special Management Unit ("SMU").  *Final Compl.* ¶ 10. While in the SMU, Mr. Stile avers he was subject to regular strip and body cavity searches, and witnessed corrections officers spit in his food, and due to the latter conduct, did not eat for thirty-nine days.  *Id.* ¶¶ 12-14.  Mr. Stile maintains that during the time in the SMU, he was wrongfully sprayed with chemical agents, shocked, and assaulted numerous times as well as denied access to medical care, a phone, writing materials, and his glasses, and he had no ability to contact his counsel or the Court.  *Id.* ¶¶ 16-30.  Mr. Stile also complains of disciplinary hearings being held without his presence and assessing him fines in excess of $500.  *Id.* ¶ 33.  Mr. Stile maintains that while in transport from Somerset County Jail to Cumberland County Jail, two of the Defendants lost more than 1,000 pages of his legal and previously filed grievance papers.  *Id.* ¶ 39.

---

[33]     County Defendants attached a copy of these coverage certificates to their Statement of Material Facts.  County DSMF ¶ 5, Ex. 2 (ECF No. 439-2).

As a result, Mr. Stile asserts that during his pretrial detention at the Somerset County Jail, Defendants assaulted him, subjected him to excessive force, deprived him of due process, the right to contact counsel, the right to petition for redress of grievances, denied the right to medical care, and the right to receive religious services, discriminated against him in violation of the ADA, and subjected him to unlawful strip and cell searches. *See generally Final Compl.*

## B. Majority Defendants' Motion for Judgment on the Pleadings and for Summary Judgment

The Majority Defendants consist of individuals employed at the Somerset County Jail. In their motion for judgment on the pleadings, Defendants argue they have no individual liability on an ADA claim. *Majority Defs. Mots.* at 3 (citations omitted). They contend that Mr. Stile failed to adequately allege an actual injury in being limited access to a telephone, visits with his attorney, and the misplacement of legal papers. *Id.* (citing *Lewis v. Arizona Dep't of Corrections*, 518 U.S. 343, 351 (1995)). They dismiss Mr. Stile's unlawful search claims noting that under *Hudson v. Palmer*, 468 U.S. 517, 530 (1984), the Fourth Amendment's prohibition on unreasonable searches is inapplicable to prison cells. *Id.* at 4.[34]

In their summary judgment motion, the Defendants maintain Mr. Stile's § 1983 claims are barred because before bringing these claims, Mr. Stile failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). *Id.* at 5-7. Alternatively, Defendants contend that their individual

---

[34] To the extent Mr. Stile may argue that the harm he suffered related to his counsel's effectiveness in his criminal case, Defendants argue that Mr. Stile cannot pursue the claim without obtaining habeas corpus relief. *Id.* at 44.

circumstances warrant summary judgment on Mr. Stile's excessive force claim and any claim regarding strip searches.[35]   In regard to the excessive force claim, Defendants assert that they are shielded under qualified immunity, and moreover, the utilized force was not objectively unreasonable. *Id.* at 7-9.

Defendant Meunier, who used OC spray and a shocking device on December 26, 2011, maintains that the use was appropriate, and that although he witnessed the use of a shocking device on December 21, 2011 and January 5, 2012, he did not have a reasonable opportunity to intervene. *Id.* at 36. Defendants Fails, Simonds, and Smith argue they should be granted summary judgment on Mr. Stile's excessive force claims because in the particular circumstances presented in Mr. Stile's case, his right not to have the handheld electronic device deployed against him is not clearly established. *Id.* at 38-39. Certain individuals also had supervisory authority, and they argue the facts do not support a finding of supervisory liability given that the record lacks the prerequisites for imposing supervisory liability as there were no

---

[35]     Defendants ask for summary judgment on Mr. Stile's excessive force claim as to Defendants Andrews, Berube, Brown, Carson, Julie (Hayden) Gilblair, Kline, LaPlante, Madore, and Pike because they did not participate in any extractions. *Id.* at 10. Defendants also request summary judgment on Mr. Stile's excessive force claim relating to the use of an electronic devices on him as to Defendants Almeida, Baldinelli, Boone, Bussell, Campbell, Cunningham, (Whitney) Cusson, David Davis, Gary Davis, Garling, Garnett, Grant, Hapworth, Herrera, Hinton, Jewell, Karwanski, Libby, Lightbody, Maroney, Martin, McLaughlin, Milligan, Moore, Morrow, Munn, Pooler, Pullen, Rivard, Sher, and Soare because they did not use or witness the use of such devices. *Id.* at 11.

Defendants further state that Defendants Bugbee, Ducharme, French, Gilblair, Haley, Kelley, Meunier, Richards, and Rizzo are entitled to summary judgment on the excessive force claims because, although they witnessed the use of electronic devices on Mr. Stile, the use was not excessive and/or these Defendants did not have a reasonable opportunity to intervene. *Id.* at 28.

Defendants request individual assessments with respect to any claim involving strip searches because they were not participants in any strip searches. These defendants are all of the female officers, Defendants Almeida, Boone, Brown, Carson, Cunningham, Cusson, Jennifer Gilblair, Hapworth, Julie Gilblair (Hayden), Jewell, Kelley, Pooler and Smith, and certain male officers, Andrews, Berube, Crafts, Kline, Lancaster, Madore, Maguire, Morrow, and Swope. *Id.* at 45.

unconstitutional conditions and no causal connection between their conduct and Mr. Stile's alleged constitutional violations.[36]

Defendants contend Mr. Stile's claim of being denied medical care contradicts the record, and so they should be afforded summary judgment on that theory. *Id.* at 42. Defendants also maintain they are entitled to summary judgment on any due process claim related to disciplinary hearings, because Defendant Garling was the only one among them who participated in a hearing involving Mr. Stile, and Mr. Stile was present at that hearing and did not appeal the result of that hearing. *Id.* at 46. Finally, Defendants assert that any state law tort claims are barred by Mr. Stile's failure to serve a notice of claim under the Maine Tort Claims Act.[37] *Id.* at 46-47.

### C. Motion for Judgment on the Pleadings and for Summary Judgment by Defendants Plourd and Jacques

Defendants Plourd and Jacques adopt and incorporate the arguments asserted by the Majority Defendants in support of their motion for judgment on the pleadings. *Plourd/Jacques's Mots.* at 1. Throughout their summary judgment motion, Defendants Plourd and Jacques argue the record will not support a finding of liability.

Defendant Plourd, a sergeant, participated in fourteen cell extractions and administered electrical shocks on multiple occasions. *Id.* at 2-4. He also participated in a cell search on December 22, 2011 conducted by ATF Agent Brent McSweyn. *Id.* at 2. He argues he appropriately used the electronic device because Mr. Stile was fully able to walk and was refusing an order to do so. *Id.* at 3-4. Defendant Plourd

---

[36]     Defendants Swope, Maguire, and Crafts.
[37]     One individual, Defendant Lancaster, did not work at the Somerset County Jail until months after the U.S. Marshal removed Mr. Stile from the Somerset County Jail. Majority DSMF ¶ 153.

also conducted two disciplinary proceedings. *Id.* at 5. Mr. Stile was not present for the hearings, both of which occurred on September 26, 2012, because he was no longer at the facility when the hearings occurred. *Id.* Defendant Plourd contends he was not involved in the preparation of any meals and was not involved in the decision regarding Mr. Stile's ability to see his attorney. *Id.* at 5. Defendant Plourd did not conduct a strip search, but he was the supervisor when some searches were conducted. He argues the searches were appropriate because maximum security inmates are subject to such searches whenever they leave or return to the cell, including for escorted trips to the medical department. *Id.* at 6.

Defendant Jacques, a lieutenant, participated in two cell extractions. *Id.* at 6-7. During one, Defendant Fails used the shocking device three times. *Id.* at 7-8. Defendant Jacques maintains the device was used before he arrived at the cell. *Id.* at 8. On the second occasion, although an electric shield was present, neither it nor any other electronic shocking device was applied to Mr. Stile. *Id.* at 8. Defendant Jacques conducted four disciplinary hearings. *Id.* at 9. Mr. Stile refused to attend and failed to appeal from the decision following a January 19, 2012 hearing. *Id.* Defendant Jacques conducted the other hearings after Mr. Stile was no longer an inmate at the jail. *Id.* at 9. Defendant Jacques was not involved in meal preparation or in decisions related to Mr. Stile's communication with counsel. *Id.*

Defendants Plourd and Jacques argue they are entitled to summary judgment on the excessive force claim because Mr. Stile did not exhaust the available administrative remedies and because the doctrine of qualified immunity precludes

recovery. *Id.* at 10-17. They note that Mr. Stile only filed one Level 2 grievance at Somerset County Jail received on October 17, 2011 and it concerned problems with the medical staff, which was before the incidents in his complaint took place. *Id.* at 11. Defendants Plourd and Jacques argue that even if Mr. Stile's claims are not barred under the PLRA, they are entitled to qualified immunity as there are no cases of controlling authority in the First Circuit to support a finding that any conduct by Defendant Jacques or Defendant Plourd violated a clearly established constitutional right. *Id.* at 12-13. They further argue that there is no evidence that their conduct inexorably led to any of the alleged constitutional violations by their subordinates, and thus, there can be no supervisory liability. *Id.* at 15.

Defendants Plourd and Jacques contend that the force used against Mr. Stile, considering the circumstances in which it was done, was not objectively unreasonable because Mr. Stile "generally was hostile, belligerent, and uncooperative." *Id.* at 17 (internal quotations omitted) (quoting *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004)). In regard to Mr. Stile's First Amendment claims, they note that Mr. Stile has not specified which Defendants were responsible for these alleged violations, and nevertheless, reasonable restrictions on inmate's First Amendment rights have been upheld if they further legitimate penological goals. *Id.* at 18 (citing *Beard v. Banks*, 548 U.S. 521, 524-35 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 128-137 (2003)). Lastly, Defendants Plourd and Jacques argue any claim concerning access to court or searches and seizures is not supported by governing law or the record. *Id.* at 17-19.

### D. Defendants Somerset County and Barry Delong's Motion for Judgment on the Pleadings and Motion for Summary Judgment

Defendant Barry Delong, former Somerset County Sheriff,[38] argues he has no individual liability under the ADA, and that Mr. Stile failed to state an actionable claim for the denial of access to the courts because there are no facts alleged or established that would support a finding of harm to Mr. Stile's interest in litigation. *County Defs.' Mot. for J. on the Pleadings and for Summ. J.* at 2-3. Defendant Delong contends summary judgment on any claim asserted against him in his individual capacity is warranted because he had no personal contact with Mr. Stile and he did not participate in any of the alleged matters or incidents. *Id.* at 4-5 (citing *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49-50 (1st Cir. 2009); *Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir. 1984)).

County Defendants also argue summary judgment is appropriate on Mr. Stiles' claims under 42 U.S.C. § 1983 and the ADA because other than any complaints regarding three disciplinary hearings, Mr. Stile failed to exhaust available administrative remedies, and under the PLRA, to bring any suit challenging prison conditions, an inmate needs to exhaust his or her administrative remedies. *Id.* at 5-7. County Defendants further contend that Mr. Stile failed to establish facts that would support a claim under the ADA or under § 1983, including a claim of municipal or supervisory liability.[39] *Id.* at 8-13, 19-20. Finally, County Defendants argue that

---

[38] Defendant Delong retired on December 31, 2014. County DSMF ¶ 2.
[39] Defendants contend the record lacks any evidence of an established policy or custom that promoted or condoned the use of excessive force, that deprived Mr. Stile access to the courts or appropriate medical care, that required inappropriate strip searches, or that interfered with his religious practice. In his Amended Complaint, Mr. Stile alleges that his detention in the SMU deprived him of "rights guaranteed by the First Amendment of the United States Constitution to freedom of speech and religion," and that he requested clergy after twenty days in the SMU because "he did not believe he was going to live." *Final Compl.* ¶ 34.

Mr. Stile's state law tort claims are barred because he failed to serve a notice of claim as required by the Maine Tort Claims Act and because of the immunity afforded by the Act to the County Defendants. *Id.* at 17-19.

### E.    David Allen's Motion for Summary Judgment

Defendant David Allen, the jail administrator, incorporates the Majority Defendants' arguments from their motions. *Allen's Mot.* at 4. He reiterates that Mr. Stile's claims are barred because he did not exhaust his administrative remedies as required under the PLRA. *Id.* at 3-4. He also maintains the record does not support supervisory liability given his lack of involvement in the underlying events, and that he is immune from liability in his individual capacity. *Id.* at 6-20[40]

### F.    Mr. Stile's Motion to Strike Video Exhibits

Through this motion, Mr. Stile asks the Court to exclude all video evidence cited by Defendants that depicts a January 17, 2012 cell extraction, because the recordings were not produced in discovery. *Pl.'s Mot. to Strike Video Exs.* at 1. Specifically, he references "Exhibits 20A, 20B, and 20C." *Id.* Alternatively, Mr. Stile argues that if the Court considers the video recordings, he should be permitted to have a forensic examination of the jail computers to detect any additional video recordings that might exist. *Id.* In his motion for ruling on his motion to strike video exhibits, Mr. Stile reiterates these contentions. *Mot. for Ruling on Mot. to Strike* at 1.

---

[40] According to other Defendants, the jail administrator or the assistant jail administrator would make the decision when to return an inmate from segregation to the general population after consulting with medical and A-Pod staff. County DSMF ¶ 22.

### G. Mr. Stile's Motion for Court to Grant Order Pursuant to Rule 56(d)

Mr. Stile's motion for relief under Rule 56(d) relates to Defendant Somerset County's assertion of absolute immunity under the Maine Tort Claims Act. *Pl.'s Mot. for Court to Grant Order Pursuant to Rule 56(d)* at 1-2. According to Mr. Stile, he cannot access Maine statutes or cases through the library resources provided by the Federal Bureau of Prisons. *Id.* at 2. In response, Defendants provided Mr. Stile with copies of the applicable statutes and the state court opinion cited in the Defendants Somerset County's motion. *Resp. to Pl.'s Mot. for Court to Grant Order Pursuant to Rule 56(d)* (ECF No. 565).

## V. DISCUSSIONS

### A. Plaintiff's Motions

#### 1. Motion to Strike

Through the motion to strike, Mr. Stile asks the Court to strike three video recordings included in Majority Defendants' Exhibits 20A, 20B, and 20C, which depict an extraction on January 17, 2012. Mr. Stile contends Majority Defendant did not previously disclose the video and that the videos should, therefore, be excluded. The Majority Defendants assert that they disclosed the videos in discovery but labeled the videos differently at the time. *Defs. Resp. to Pl.'s Mot. to Strike Video Exs.* at 2, (ECF No. 502). Mr. Stile argues the alleged nondisclosure of the January 17, 2012 extraction prevented him from joining "M. Jacques" as a defendant. *Reply to Resp. to Pl.'s Mot. to Strike Video Exs.* at 2, (ECF No. 514). He also cites the summary judgment record, which suggests the video of a January 17 extraction was recorded

over.[41]  *Id.* (citing Majority DSMF ¶ 458).  Because Mr. Stile was provided all of the video recordings that form the summary judgment record, and because Mr. Stile does not argue that the alleged missing recording contains information that would support his challenge to Defendants' summary judgment motions, the Court denies Mr. Stile's motion to strike.

## 2.    Motion for Rule 56(d) Order

Mr. Stile argues that relief pursuant to Rule 56(d) is appropriate because he did not have access to the Maine Revised Statutes and therefore was unable to respond to arguments asserting immunity under the Maine Tort Claims Act.  *Pl.'s Mot. for Court to Grant Order Pursuant to Rule 56(d)* at 1-2.  The County Defendants, through their opposition, furnished copies of the relevant law and a state court opinion to Mr. Stile.  *Resp. to Pl.'s Mot. for Court to Grant Order Pursuant to Rule 56(d)*, Attach. 1-2 (ECF No. 565).  Separately, Mr. Stile filed a letter with the Court in which he asserts that his ability to review materials produced in discovery had been significantly impacted by the limited access he had to digital storage media. *Letter* at 1-3 (ECF No. 563).  Insofar as Defendants provided Mr. Stile with the Maine authority Mr. Stile claims he lacked, Mr. Stile's motion for relief under Rule 56(d) is moot.  To the extent Mr. Stile contends more time is necessary to permit him access to certain video evidence, the Court notes that whatever limitations he might have experienced with regard to accessing some information due to his transfer to another

---

[41]    Evidently there were two extractions on January 17, 2012, and the one in the video occurred at 21:30 p.m. Defendants' statement concerning the unavailable video was in reference to the other extraction, which occurred at 15:25 p.m.

facility and the policies of various facilities, the record demonstrates that Mr. Stile has had access to the information for extended periods during the more than ten months the dispositive motions have been pending. The Court denies Mr. Stile's Rule 56(d) motion.

### B. Defendants' Dispositive Motions

#### 1. Failure to Exhaust Administrative Remedies

Federal law requires a prisoner to exhaust the available administrative remedies before initiating a lawsuit based on 42 U.S.C. § 1983, or any other federal law. 42 U.S.C. § 1997e. Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court.").

The Supreme Court held that § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "Compliance with prison grievance procedures . . . is all that is required . . . to

'properly exhaust.'" *Jones*, 549 U.S. at 218. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

A defendant may raise the § 1997e exhaustion requirement as an affirmative defense. *Id.* at 216; *see also Ramos v. Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) ("The Supreme Court made it plain . . . that exhaustion under § 1997e(a) is not a jurisdictional condition, and has held it to be an affirmative defense." (citing *Jones,* 549 U.S. at 212)). Because failure to exhaust administrative remedies is an affirmative defense rather than a jurisdictional issue, initially, a defendant bears the burden of proof. *Jones*, 549 U.S. at 216. To satisfy that burden, a defendant must establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca,* 747 F.3d 1162, 1172 (9th Cir.) (en banc), *cert. denied sub nom.*, *Scott v. Albino,* 135 S. Ct. 403 (2014). Thereafter, the plaintiff must present evidence that demonstrates "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

The requirement that Mr. Stile exhaust administrative remedies applies to his claims under both § 1983 and the ADA. "[E]xhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). *See also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); *O'Guinn v.*

*Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061 (9th Cir. 2007) ("Because the ADA and Rehabilitation Act are federal laws, the plain language of the PLRA requires that prisoners bringing an action under these federal statutes challenging prison conditions must first exhaust available administrative remedies"); *see also Nottingham v. Richardson*, 499 F. App'x 368, 373 (5th Cir. 2012) (ADA).

Exhaustion is required even though the prisoner's suit seeks monetary damages not available through the prison's grievance process. *Booth v. Churner*, 532 U.S. 731, 734-35 (2001). Exhaustion is also required even though the claim raises constitutional claims, such as claims alleging excessive force by prison officials. *Woodford*, 548 U.S. at 91 n.2; *Porter*, 534 U.S. at 520. However, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738). In *Ross*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.*

"First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736, and providing as examples a situation in which a handbook tells prisoners to send a grievance to an officer who then "disclaims the capacity to consider the grievance," and a situation where

"administrative officials have apparent authority, but decline ever to exercise it"). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* In other words, a process that, viewed objectively, is too confusing to understand, is not an available process. *Id.* Third, an otherwise available grievance process is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.[42] The record establishes that for each of Mr. Stile's various claims there existed a process through which a prisoner could pursue administrative relief.

### a. Grievance of Unconstitutional Prison Conditions

All inmates at the Somerset County Jail are given a copy of the Inmate Handbook, which describes the grievance procedure and advises that the Prison Litigation Reform Act requires that inmates exhaust all administrative remedies before they can file suit alleging violations of federal law. A grievance is authorized by an inmate for an alleged violation of civil, constitutional, or statutory rights, for an alleged criminal or prohibited act by a staff member, to resolve a condition existing within the jail that creates unsafe or unsanitary living conditions, or to resolve a chronic condition existing within the jail that contradicts the Detention and Correctional Standards for Maine Counties and Municipalities.

---

[42]     In *Ross*, the Supreme Court remanded the case for further proceedings where the record suggested that the commencement of an investigation into prisoner abuse by the prison's Internal Investigation Unit cut off any further processing of the prisoner's related prisoner grievance and foreclosed his access to any relief through that process. 136 S. Ct. at 1860-62.

The jail grievance policy, SCJ Policy 11.3, requires that an inmate first file a Level 1 grievance. If an inmate is not satisfied with the response to a Level 1 grievance, the inmate may file a Level 2 grievance. If an inmate remains unsatisfied after receiving a response to a Level 2 grievance, the inmate may file a grievance with the Maine Department of Corrections for external review. The filing with the Department of Corrections is the final step in the Somerset County Jail grievance procedure.[43] Mr. Stile filed one Level 2 grievance at the Somerset County Jail, which was received by the jail on October 17, 2011, but the grievance does not concern the claims in this action. Two years after the events that gave rise to this action, and months after filing this action, Mr. Stile sent a letter dated May 8, 2014 to the Maine Department of Corrections regarding alleged assaults, in which he requested an investigation and referral for prosecution.

### b. Appeal of disciplinary proceedings

SCJ Policy 10.1, entitled "Inmate Discipline," sets forth an inmate discipline system designed to hold inmates accountable for misconduct, and to encourage acceptable behavior. This policy includes a list of disciplinary penalties that can be imposed for the violation of a jail rule. Pursuant to SCJ Policy 10.1, an inmate may appeal from the decision of a disciplinary hearing officer to the jail administrator within ten days of the disciplinary hearing. The decision of the jail administrator is

---

[43] The Majority Defendants did not file a copy of the grievance policy, but the County Defendants did. (ECF No. 439-12). According to the Second Circuit, "defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (quotation marks and brackets omitted).

final and cannot be appealed.  Mr. Stile appealed three disciplinary hearings while at the Somerset County Jail.

### c.     Medical concerns

SCJ Policy 12.16 applies to inmates with disabilities and requires an inmate with a disability to file a complaint with medical staff regarding any service issues.[44] Pursuant to SCJ Policy 12.16, an inmate is required to submit a brief written description of the complaint and submit it to any staff member.  The medical staff reviews the complaint and provides a written reply within five business days, with copies of the complaint and the reply forwarded to the medical director.

### d.     Analysis

Defendants' motions for summary judgment question whether Mr. Stile exhausted all the available administrative remedies.[45]  To be an available remedy, a grievance procedure must actually apply to the type of claim at issue.  *Bean v. Barnhart*, No. 1:13-cv-00196-NT, 2015 WL 3935777, at *5 (D. Me. June 26, 2015) (citing *Booth*, 532 U.S. at 736 n.4, and *Malik v. D.C.*, 574 F.3d 781, 785 (D.C. Cir. 2009)).  The summary judgment record establishes that SJC Policy 11.3, the jail grievance policy, applied to all of the claims that underlie Mr. Stile's § 1983 action regarding the conditions of his confinement in the SMU.  In addition, the record

---

[44]     The policy states that it is "provided as guidance for health care staff to ensure the civil rights of inmates regarding access to 'medically necessary' program services in compliance with the Americans with Disabilities Act." (ECF No. 439-26).

[45]     The Majority Defendants took the lead on this argument, and the County Defendants provided some supplemental briefing, particularly as to Mr. Stile's ADA claim.  *Majority Defs.' Mot. for J. on the Pleadings and for Summ. J.* at 5-8; *County Defs.' Mot. for J. on the Pleadings and for Summ. J.* at 5-8.  Defendants Jacques and Plourd and Defendant Allen advanced the argument as well.  *Defs. Plourd's and Jacques's Mot. for J. on the Pleadings and for Summ. J.* at 11-12.  Defendant Allen adopted the submissions of the Majority Defendants.  *Def. Allen's Mot. for Summ. J.* at 4-6.

establishes that policy 12.16 applied to Mr. Stile's assertion that he was entitled to different treatment based on the protections afforded by the ADA. Finally, the record establishes that SJC Policy 10.1 applied to any of Mr. Stile's claims concerning the disciplinary proceedings that transpired before or after his detention in the SMU.[46]

As the facts outlined above demonstrate, Mr. Stile did not comply with or exhaust the Somerset County Jail grievance process. Mr. Stile's May 8, 2014 letter to the Department of Corrections is insufficient given that he did not file a Level 2 grievance before he sent the letter to the Department. Mr. Stile's "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. Mr. Stile also did not file any complaint regarding the jail's failure to comply with the ADA. The only matters for which Mr. Stile exhausted the available administrative remedies are three disciplinary matters.

In his amended complaint, Mr. Stile alleged that he "grieved" the manner by which meals were served to inmates in the SMU and "his grievances went unanswered." *Final Compl.* ¶ 14. Additionally, he claimed that a box of legal documents was "intentionally lost" by Defendants Andrews and Kline, and that the

---

[46]    Mr. Stile entered the SMU following his assault on another prisoner. At that time, he was under administrative segregation, as his placement in the SMU was not the product of a disciplinary sanction. Furthermore, the conditions of which Mr. Stile complains (use of force, lack of clothing, lack of phone access, and the failure to address medical need) were measures administratively imposed in response to his hunger strike and what Defendants describe as Mr. Stile's refusal to comply with orders to submit to handcuffing and walk to medical, i.e., they were not imposed as sanctions at the conclusion of a disciplinary process. Given the lack of relationship between the conditions of confinement challenged in Mr. Stile's action and the disciplinary process, his available means to challenge the imposition of those conditions was policy 11.3.

box "contained many grievances already filed with the Somerset County Jail." *Id.* ¶ 39.

To demonstrate that he was thwarted in an attempt to follow the grievance procedure, at a minimum, Mr. Stile must demonstrate that he asked to address his circumstances through the grievance procedure. *Thompson v. Coulter*, 680 F. App'x 707, 711 (10th Cir.), *cert. denied*, 138 S. Ct. 180 (2017) ("[Plaintiff] contends that he was prevented from filing a grievance on the sexual assaults because immediately after the assaults he was placed in segregation without his writing materials . . . . Mr. Thompson has not alleged, however, that he attempted to file a grievance but was prevented, thwarted, or hindered from doing so by prison personnel"); *compare Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) (finding that administrative remedies were unavailable where the plaintiff asked three officers how he could file a grievance, only one officer answered, and that officer told the plaintiff he could not file a grievance). While the record establishes that he made oral complaints during various interactions with jail personnel, the record lacks any evidence to support a finding that Mr. Stile asked for and was denied assistance to file an official grievance or to pursue a disability-related accommodation through the applicable administrative process. Even if Mr. Stile had filed the required Level 2 grievance, his May 8, 2014 letter to the Department of Corrections would not constitute a timely filing. [47]

---

[47] The grievance policy states, "Inmates have unrestricted access to file alleged complaints of non-compliance with mandatory standards against the facility with the Maine Department of Corrections, Inspections Division, when a condition or issue is not resolved through the facility

In sum, Defendants have established that the Somerset County Jail maintained policies that provided administrative remedies for the particular matters that underlie Mr. Stile's federal claims. The burden shifts to Mr. Stile to demonstrate that the remedies were not available to him. Mr. Stile has not met this burden because he has not demonstrated that he ever properly attempted to pursue a grievance with respect to the matters at issue. Based on Mr. Stile's failure to exhaust the available administrative remedies, Defendants are entitled to summary judgment on all claims, except for the claims arising out of three disciplinary proceedings for which Mr. Stile exhausted available remedies.

## 2. Violation of Due Process

Pretrial detainees are entitled to certain process before punishment is imposed. That is, they have the right "to be free from punishment" without due process. *Bell v. Wolfish*, 441 U.S. 520, 534 (1979). "It is . . . well established that the process that a pretrial detainee must be afforded at a disciplinary hearing is that set forth by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974)." *Ford v. Bender*, 768 F.3d 15, 27 (1st Cir. 2014). *Wolff* provides that an inmate should be permitted to appear to present his position on disciplinary charges. 418 U.S. at 565-66.

Mr. Stile alleges he was deprived of due process when disciplinary board hearings were held in his absence, which resulted in in disciplinary segregation and monetary fines. *Final Compl.* ¶ 33. Mr. Stile exhausted available administrative

---

grievance process." *Id.* § A.4. The policy elsewhere specifies that the informal grievance is a mandatory first step. *Id.* § B.1.

process regarding three disciplinary hearings, by filing appeals. Defendants Garling and Plourd conducted the hearings.

On October 12, 2011, Defendant Garling conducted two disciplinary hearings concerning Mr. Stile, and Mr. Stile was present for both hearings. On January 12, 2012, Defendant Garling conducted another disciplinary hearing. The record does not indicate Mr. Stile appealed the January 12 disciplinary hearing. The only hearing conducted by Defendant Garling for which Mr. Stile exhausted the available administrative remedies was the October 12 hearing, outside the timeframe of his claims. Mr. Stile, however, was not present for the hearing on January 12, 2012.

Defendant Plourd conducted two disciplinary hearings on September 26, 2012, to address two matters: infraction 12-776-DI and infraction 12-781-DI.[48] The hearings occurred without Mr. Stile present. Mr. Stile later appealed. According to Mr. Stile's amended complaint, "Defendants" imposed disciplinary segregation in the SMU and monetary fines in excess of $500.00," which was deducted from his inmate account. *Final Compl.* ¶ 33. The imposition of a monetary fine, standing alone, would require compliance with certain procedural due process requirements as it qualifies as a property interest.[49] *Drewry v. Maine Dept. of Corrections*, 1:16-cv-00075-GZS,

---

[48] Defendants have not identified the charges.

[49] Defendant Plourd separately argues that Mr. Stile cannot recover money damages on any claim because he did not suffer physical injury, citing 42 U.S.C. § 1997e(e). *Defs. Plourd's and Jacques's Mot. for J. on the Pleadings and for Summ. J.* at 12. Granted, it is not apparent from the record how any harm associated with Mr. Stile's experience in the SMU could be regarded as the product of a flawed disciplinary hearing months later. By 2012, he was already in the SMU on legitimate grounds, given that he assaulted another inmate. "The administrators of the prison must be free, within appropriate limits, to sanction the prison's pretrial detainees for infractions of reasonable prison regulations that address concerns of safety and security within the detention environment." *Collazo-Leon v. U.S. Bureau of Prisons*, 51 F.3d 315, 318 (1st Cir. 1995). The forced extraction and relocation of Mr. Stile to the camera cell based on his refusal to be handcuffed on December 26, 2011, and the subsequent administrative response consisting of regular trips to the

2016 WL 4082625, *5 (D. Me. July 29, 2016) (citing *Coombs v. Welch*, No. 15-1776

(1st Cir. May 9, 2016) (citing *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997)

(monetary fine))); *see also Kuperman v. Wrenn*, 645 F.3d 69, 73 n.5 (1st Cir. 2011)

(claim for punitive damages survives § 1997e(e)).

Mr. Stile asserts he was assessed monetary fines as part of the disciplinary

sanction without personally being present, and therefore under First Circuit

precedent, Mr. Stile alleges a loss that implicates due process. *Wolff* provides that an

inmate should be permitted to appear to present his position on disciplinary charges.

418 U.S. at 565-66. Mr. Stile was not present at three disciplinary hearings. Of those

three hearings, he appealed both disciplinary hearings conducted by Defendant

Plourd, but not the January 12 hearing conducted by Defendant Garling. On the

record, the Court cannot conclude at what hearing Mr. Stile was fined in excess of

$500. If Mr. Stile was in fact present at the disciplinary hearing where he was fined,

his due process claims, which are premised on his absence, would fall of their own

---

medical department and denial of telephone access due to Mr. Stile's maintenance of a hunger strike and contention he could not walk were supplemental conditions of confinement subject to the grievance process.

In other words, Mr. Stile has not demonstrated that there were conditions imposed through a disciplinary proceeding that he exhausted by means of an appeal. *Cf. Thomas*, 787 F.3d at 848 (holding remedies were not available when officer incorrectly told the plaintiff he could not file a grievance because only a disciplinary appeal was appropriate, and observing that administrators should have provided access to grievance procedures despite the prisoner's filing of an appeal of the underlying disciplinary sanction where the prisoner was "not contesting his discipline or the conduct that generated the charges [but r]ather, [was] challenging the officers' conduct that occurred after his offenses"). Here, Mr. Stile complains of how he was handled in the SMU and how long he was kept there; the record does not demonstrate that his placement in the SMU on disciplinary grounds was inappropriate. Finally, assuming Mr. Stile alleges that he was denied due process before his placement in the SMU, or that the handling he experienced was excessive in relation to the gravity of his underlying infraction(s), and deprived him of constitutional rights before any process could be completed, *see, e.g.*, *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 58 (2d Cir. 2017), Mr. Stile had to exhaust the claim for denial of predeprivation process administratively, through the grievance process, as discussed above. 42 U.S.C. § 1997e.

weight.  Also, if Mr. Stile were fined without being present but did not timely appeal that hearing, his claim would be barred by the PLRA.[50]  If, however, he was not present at the hearing that resulted in the fine and if he did appeal the fine, he may have a viable claim that his due process rights were violated.

Because of this uncertainty in the record, the Court dismisses without prejudice the dispositive motions on Mr. Stile's claims of due process violation stemming from his monetary fine as to Defendants Plourd and Garling, as well as to Defendant Allen, the jail administrator during both occasions and who would have reviewed Mr. Stile's appeal of the monetary fine if imposed by Defendant Plourd.  If the Defendants wish to file further dispositive motions to clarify this factual issue, they must do so within thirty days of this order.

### 3.     James Stile's State Law Assault Claim

### a.     The Maine Tort Claims Act's Notice Requirements

Mr. Stile asserted a state law claim of assault and battery based on the same conditions that underlie his federal excessive force claim.  When tort claims are asserted against Maine governmental entities and employees, the MTCA requires that the claimant substantially comply with certain "notice requirements" before bringing a civil action in court.  14 M.R.S. §§ 8102, 8107(1), 8107(4).

> **1. Notice requirements for filing.**  Within 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why

---

[50]     If, as Defendant Garling asserts, Mr. Stile refused to exit his cell to attend his scheduled hearing, Mr. Stile could have waived the right to be present at the hearing.  Mr. Stile claims he was physically unable to attend the hearings but does not specify which hearings.  If the Defendants file a subsequent dispositive motion to clarify at what hearing Mr. Stile was allegedly fined, they should clarify this issue as well.

notice could not have reasonably been filed within the 180-day limit, a claimant or a claimant's personal representative or attorney shall file a written notice containing:

A. The name and address of the claimant, and the name and address of the claimant's attorney or other representative, if any;

B. A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;

C. The name and address of any governmental employee involved, if known;

D. A concise statement of the nature and extent of the injury claimed to have been suffered; and

E. A statement of the amount of monetary damages claimed.

*Id.* § 8107(1). When the claim is against a political subdivision or one of its employees, the Maine Tort Claims Act requires that the notice "shall be addressed to and filed with one of the persons upon whom a summons and complaint could be served under the Maine Rules of Civil Procedure, Rule 4, in a civil action against a political subdivision." *Id.* § 8107(3)(B).

Defendants argue they are entitled to summary judgment because Mr. Stile did not "serve" the required notice on Somerset County. In support, the Defendants introduced the Affidavit of Defendant Delong, a former Sheriff of Somerset County, who states that Mr. Stile did not serve a notice of claim alleging any state tort law claims until this present action. Mr. Stile apparently attempted to serve notice upon Somerset County through a court pleading signed on May 29, 2012, and received by Somerset County Superior Court on June 8, 2012. Mr. Stile also apparently sent the pleading or some other type of "notice" to a law firm who represented Somerset

County in some capacity, for which he received a response from counsel dated December 14, 2012, who informed him that no "notice" was enclosed.[51]  A review of Mr. Stile's allegations show that he primarily complains of conduct by the Defendants from September 2011 to February 1, 2012, as well as during a few days in September 2012, May 2013, and from September 24, to September 30, 2013.

Maine Rule of Civil Procedure 4 provides that that service upon a county is accomplished by delivering the pleadings in question "to one of the county commissioners or their clerk or the county treasurer." ME. R. CIV. P. 4(d)(4). The purpose of the notice requirement is "to assure that the notice will be received by an official having authority to deal with plaintiff's claim or that the official receiving the notice is one charged with the duty of transmitting the notice to the proper officials." *Robinson v. Washington County*, 529 A.2d 1357, 1360 (Me. 1987) (quoting *Faucher v. City of Auburn*, 465 A.2d 1120 (Me. 1983)).  The MTCA allows for substantial compliance in terms of notice insofar as "[a] claim filed . . . shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact prejudiced thereby." 14 M.R.S.A. § 8107(4).  "The issue is whether the notice includes mere 'inaccuracies,' or whether the failures are 'fundamental.'" *Palm v. Sisters of Charity Health, Sys.*, 537 F. Supp. 2d 228, 231 (D. Me. 2008) (quoting *Faucher*, 465 A.2d at 1123); *see also Deschenes v. City of Sanford*, 2016 ME 56, ¶ 16, 137 A.3d 198 ("[O]ral notice can never constitute substantial compliance.").  In *Robinson*, the Law

---

[51]     Mr. Stile also filed in Superior Court an application to proceed without prepayment of fees, dated June 6, 2012, however, it seems that application was denied.   (ECF No. 566-3.)

Court held that a plaintiff substantially complied with the notice requirement where her notice was addressed to the Sheriff of Washington County at the Washington County Courthouse, and "the written notice was delivered directly to one of the litigants, namely, Sheriff Prescott, the chief law enforcement officer for Washington County." 529 at 1360-61.

### i. September 2011 to February 1, 2012 Claims

Mr. Stile was required to provide notice for these claims within 180 days of his last claim arising, making July 30, 2012, the last day by which he had to provide notice for these claims. In that window, the only possible "notice" Mr. Stile provided was his May 29, 2012 letter. In contrast to *Robinson*, Mr. Stile's May 29, 2012 letter was not directly delivered to one of the litigants, only to the Somerset County Superior Court. The record does not show that the Defendants were served notice pursuant to this letter. This is a not a mere inaccuracy, but a fundamental failure of notice given that one of "[t]he general purposes of [the] notice requirement [is] to save needless expense and litigation by providing an opportunity for amicable resolution of disputes, and to allow the defendant to fully investigate claims and defenses." *Faucher*, 465 A.2d at 1123 (citation omitted). Notice must be "addressed to the proper person[s]." *Id.* at 1122. Additionally, Mr. Stile only states Defendant Allen as a potential litigant, but refers to other potential litigants as John and Jane Does as well as "all unnamed defendants yet to be identified." The Court is not persuaded that this filing constitutes substantial compliance given these significant flaws.

Nor has Mr. Stile established good cause for his inability to file a notice of his claim within the 180-day period for these claims. *Diviney v. Univ. of Maine Sys.*, 2017 ME 56, ¶ 17, 158 A.3d 5 (quoting *Peters v. City of Westbrook*, 2001 ME 179, ¶ 6, 787 A.2d 141) ("The good cause exception is interpreted narrowly since the Maine Tort Claims Act is a 'limited relaxation' of common-law sovereign immunity")). Good cause "require[s] a showing that the plaintiff was unable to file a claim or was meaningfully prevented from learning of the information forming the basis for his or her complaint." *Peters*, 2001 ME 179, ¶ 6, 787 A.2d 141. As the Plaintiff, Mr. Stile has the burden to show good cause. *Id.* ¶ 8. Even though Mr. Stile complains about various jail policies, the record lacks sufficient genuine evidence showing that these policies prevented Mr. Stile from filing his MTCA notice. Mr. Stile's September 2011 to January 31, 2012, assault and battery claims are barred under the MTCA.

### ii. Remaining Tort-Related Claims

#### a. Compliance with the Maine Tort Claims Act Notice Requirement

Mr. Stile also alleges he was subjected to various strip searches, visible cavity searches and certain other violations while at Somerset County Jail during a few days in September 2012, May 2013, and from September 24 to September 30, 2013. From what the Court can discern, Mr. Stile presumably asserts these constitute assault and battery as well. Mr. Stile evidently sent some type of "notice" to a law firm which, at the time, represented Somerset County, for which he received the response from counsel dated December 14, 2012, who informed Plaintiff that no "notice" was enclosed. Given the date of the response, this "notice" would be within the 180-day

time period for the September 2012 to September 2013 tort-related claims. Whether this "notice" substantially complied with the MTCA's notice provisions is a fact intensive issue, however. Given the record before the Court, and given that the Court must draw all reasonable inferences to the non-movant, the Court is unable to conclude that this "notice" sent to this law firm is not substantially compliant given that it also states it was "sent to Somerset County."

### b. Qualified Immunity

However, Somerset County is immune from these claims. The MTCA provides:

> Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages. When immunity is removed by this chapter, any claim for damages shall be brought in accordance with the terms of this chapter.

14 M.R.S. § 8103(1). Section 8104-A also provides for some limited immunity exceptions, none applicable to this case. As a result, because an exception does not apply here, and because the record also establishes that the County did not maintain liability insurance for any claim to which immunity would apply, which negates the possible application of section 8116,[52] Somerset County is entitled to summary judgment on Mr. Stile's assault and battery claims.

The Maine Tort Claims Act also provides "discretionary function" and "intentional act" immunity to individual officers. *Id.* § 8111(C), (E). Immunity does not apply, however, if the officer's conduct exceeds the scope of his or her authority,

---

[52] Title 14 M.R.S. § 8116 provides that in the event an entity entitled to immunity under the Maine Tort Claims Act procures liability insurance for any conduct for which it would otherwise be immune, the entity waives immunity for any claim up to the amount of the insurance.

such as where the conduct involves the excessive use of force and the circumstances would not allow for qualified immunity under federal law. *Cote v. Town of Millinocket*, 901 F. Supp. 2d 200, 248 (D. Me. 2012); *Blackstone v. Quirino*, 309 F. Supp. 2d 117, 130 (D. Me. 2004). The issue, therefore, is whether the individual Defendants are entitled to qualified immunity.

Government officers are entitled to qualified immunity unless they violate a constitutional right that was "clearly established" when they engaged in the conduct at issue. *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "This strain of immunity aspires to 'balance [the] desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive.'" *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004) (quoting *Buenrostro v. Collazo,* 973 F.2d 39, 42 (1st Cir. 1992)).

Defendants' claim of qualified immunity requires the Court to assess: (1) "whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation" and (2) "whether the violated right was clearly established at the time that the offending conduct occurred." *Ford,* 768 F.3d at 23. When the Court considers whether the constitutional right was clearly established at

the time, the Court must determine (a) "whether the contours of the right, in general, were sufficiently clear," and (b) "whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right." *Id.*

The constitutional prohibition against the use of excessive force has long been clearly established. *See, e.g.*, *Morelli v. Webster*, 552 F.3d 12, 23-24 (1st Cir. 2009). The qualified immunity analysis, however, requires a consideration of the particularized facts of the case, not broad general propositions. *Hunt*, 773 F.3d at 368. The contours of this right must have been "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). "In other words, 'existing precedent must have placed the . . . constitutional question beyond debate.'" *Hunt*, 773 F.3d at 368. Because Mr. Stile was a pretrial detainee during the relevant period, Defendants' conduct must be evaluated against the law that governs claims of excessive force rather than claims of cruel and unusual punishment. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Excessive force claims are evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

The Court concludes that the individual Defendants are entitled to qualified immunity and are therefore, immune from the assault and battery claims arising from Mr. Stile being subjected to strip and visible cavity searches during short periods

at Somerset County Jail in September 2012, May 2013, and from September 24, until September 30, 2013. *Final Compl.* ¶¶ 12, 36-38. Mr. Stile also asserts other violations of his rights, such as not having access to medication, his eyeglasses, and his legal papers. *Id.* ¶¶ 36-38.

Even viewed in the light most favorable to him, Mr. Stile's allegations are conclusory and insufficient. *Id.* As strip searches are a necessary and common safety procedure in jails, his allegations that he was subjected to daily strip searches during the brief periods he was present at the Somerset County Jail from September 2012 onward, without more, are insufficient to show the individual Defendants actions in conducting these searches were objectively unreasonable given the jail's penological interests in such searches. *See Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (citation omitted) ("[T]o withstand a properly supported motion for summary judgment, the opposing party must present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims."). Similarly, as Mr. Stile was placed in the Somerset County Jail only for brief periods from September 2012 through May 2013, there is no basis to conclude that the Somerset County Jail or its employees were responsible for making certain that certain unnamed medications, his eyeglasses, and his legal paperwork were transported with him to the Somerset County Jail for these brief stays.

The individual Defendants are entitled to summary judgment on Mr. Stile's assault and battery and other tort-based claims.

## VI.    CONCLUSION

The Court DENIES the following motions:

1) Plaintiff's Motion to Strike Video Exhibits, including his Motion for a Ruling on the Motion to Strike (ECF No. 499), (ECF No. 583);

2) Plaintiff's Motion for Court to Grant Order Pursuant to Rule 56(d) (ECF No. 562).

The Court DISMISSES as moot the following motions for judgment on the pleadings:

1) Defendants Somerset County and Barry DeLong's Motion for Judgment on the Pleadings (ECF No. 438);

2) Defendants' Motion for Judgment on the Pleadings (ECF No. 431);

3) Motion for Judgment on the Pleadings Defendants Keith Plourd and Jeffrey Jacques (ECF No. 434).

The Court GRANTS the following motion for summary judgment:

1) Defendants Somerset County and Barry DeLong's Motion for Summary Judgment (ECF No. 438).

The Court GRANTS in part and DISMISSES in part the following motions for summary judgment:

1) Defendants' Motion for Summary Judgment (ECF No. 431);

2) Motion for Summary Judgment by Defendants Keith Plourd and Jeffrey Jacques (ECF No. 434);

3) Defendant David Allen's Motion for Summary Judgment (ECF No. 440).

The Court GRANTS each motion for summary judgment, and DISMISSES without prejudice each motion as to Defendants Plourd, Garling, and Allen solely as regards Mr. Stile's due process claim stemming from his monetary fine. If the Defendants wish to file dispositive motions to clarify this factual issue, they must do so within thirty days of this Order.

SO ORDERED

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of September, 2018